## CRIBBS *v.* WALKER.

### Opinion delivered January 28, 1905.

1. DEED OR WILL—CONSTRUCTION OF INSTRUMENT.—An instrument purporting to be a deed of trust of lands, and employing apt words of conveyance, is a deed, and not a will, if it conveys a present title to the trustee, though it reserves the use of the land to the grantor during life, and the right to direct conveyances of the land, and to recall or revoke the trust if the grantor survives the trustee. (Page 115.)

2. DEED—DELIVERY.—The question of the delivery of a deed being one of intention of the grantor as manifested by his acts and words, evidence that a grantor consulted a skilled attorney as to the mode of delivering a deed, that he, with intent to make delivery, handed the deed to the grantee, who was his wife, and that she agreed that the grantor should take the deed and place it in his safe where it should remain until his death, was sufficient to prove delivery. (Page 119.)

3. EVIDENCE—ADMISSION.—Evidence that a grantor told the witness that he had delivered a certain deed to his wife was admissible, as a self-disserving statement, against him or those claiming under him. (Page 119.)

4. DEED—RETENTION BY GRANTOR—PRESUMPTION.—The fact that a deed was found among the effects of the grantor at his death raises no presumption against delivery if the grantor reserved an interest in the property conveyed, and therefore had an interest in the preservation of the deed. (Page 119.)

5. SAME.—The presumption that a deed found among the papers of the deceased grantor was not delivered is only *prima facie,* and may be rebutted. (Page 120.)

6. DEED—RULE AGAINST PERPETUITIES.—A deed conveying land at the grantor's death to the grantor's "children and their descendants" refers to those surviving at the time of the death of the children of the grantor, and brings the case within the rule that the power of alienation may be postponed for the period of a life or lives then in being. (Page 120.)

7. EQUITY—JURISDICTION—CLOUD ON TITLE.—A complaint which alleges that one of the defendants, by her fraudulent act, took from the safe of plaintiff's ancestor and filed for record a deed purporting to have been executed by such ancestor, and which on its face bars

their right of recovery, with a prayer that such deed be cancelled, states an equitable cause of action, though it incidentally asks relief of a legal nature, such as for recovery of possession and partition of the lands. (Page 120.)

8. SAME.—A plaintiff who voluntarily invokes the aid of a court of chancery cannot be heard to complain that such court had no jurisdiction. (Page 122.)

9. PLEADING—FAILURE TO ANSWER CROSS COMPLAINT—WAIVER.—Plaintiff's failure to answer defendants' cross complaint will be regarded as waived where defendants went to trial without asking for judgment *pro confesso.* *Pembroke* v. *Logan,* 71 Ark. 364, followed. (Page 123.)

10. GIFT—INCUMBERED PREMISES.—From a gift of incumbered premises no obligation to remove the incumbrance will be implied. (Page 124.)

11. CONTRACT—EVIDENCE.—Evidence that intestate in his lifetime expressed his intention to pay off a certain incumbrance on land which he had donated to his daughter is insufficient to create an obligation enforcible against his estate. (Page 124.)

Cross appeals from Pulaski Chancery Court.

THOMAS B. MARTIN, Chancellor.

Reversed.

William H. and Cullen C. Walker, grandsons of Cullen G. Cribbs, deceased, brought suit against Katie G. Cribbs, in her own right and as trustee and administratrix of the estate of Cullen G. Cribbs and Lee F. Tirrill and Lina Davis, who, with plaintiffs, were the only heirs at law of Cullen G. Cribbs.

The complaint attacked the validity of a certain deed of trust, which will be here set forth:

"This deed of trust made and executed by and between Cullen G. Cribbs, party of the first part, and Katie G. Cribbs, his wife, party of the second part, on this, the 15th day of July, 1898, witnesseth, that for and in consideration of natural love and affection which he bears to his said wife and to his heirs apparent, the beneficiaries herein, and for the further consideration of five (5) dollars to me paid, the party of the first part has conveyed, and by these presents hereby conveys, upon the express conditions and trusts herein declared, to Katie G. Cribbs the

following described property hereinafter set forth and described, to be held by her in trust for the use of the party of the first part, during his natural life, and to be conveyed, leased or mortgaged to any person or persons or corporation as the party of the first part may at any time direct said trustee to do. And after the death of the party of the first part, to be held in trust for her own use, during her natural life, and subject to the trusts aforesaid, and to be held in trust as follows, to-wit: Lots seven (7) and eight (8), block thirty-one (31), City of Little Rock; lots five (5) and six (6), block one hundred and seventeen (117), City of Little Rock; the south half of lot seven (S. ½ 7), block seventy-eight (78), City of Little Rock; and fractional lots four (4), five (5) and six (6), block seventy-eight (78), City of Little Rock, being the southwest corner of said block seventy-eight (78), and more particularly described as follows: beginning at the southwest corner of said block seventy-eight (78), thence east eighty-seven (87) feet, thence north one hundred and fifty (150) feet, thence west twenty (20) feet, thence south seventy-two (72) feet, thence west sixty-seven (67) feet, thence south seventy-eight (78) feet to beginning, hereby intending to convey all of that part of said lots now owned and held by me, whether correctly described or not. All of said property being situated in Pulaski County, Arkansas. And hereby convey all other real property which the party of the first part now owns, or may hereafter acquire in the State of Arkansas, to be held by the party of the second part in trust as aforesaid; and upon the further trusts that after the death of the parties of the first and second part hereto, to be conveyed to my heirs, who are the children of my deceased daughter, Manda Walker, and my daughters Lee F. Tirrill and Lina Davis, as follows, to-wit: To Lee F. Tirrill and to her children surviving her, at her death, the south half of lot seven (7), block seventy-eight (78), City of Little Rock, as aforesaid, lots five (5) and six (6), block one hundred and seventeen (117), City of Little Rock, as aforesaid, to be held by her during her natural life, to her sole and separate use, to the exclusion of her present or any future husband, who is to have no interest or curtesy therein, and she shall have no power to sell, mortgage or dispose of the same, and at her death said lands shall go to her children and their descendants *per stirpes,* if any such survive her. If she leaves no children or other descendants at

her death surviving her, then the said property shall go to and be divided between Lina Davis or her heirs and the said children of my deceased daughter, Manda Walker, and their heirs, one-half to Lina or her heirs and one-half to the said children of my daughter Manda Walker. The said property to be held by the said Lina, as she is to hold that which is directed herein to be conveyed to her. And to be conveyed to Lina Davis lots seven (7) and eight (8), block thirty-one (31), and part of lots four (4), five (5) and six (6), block seventy-eight (78), corner of Second and Louisiana streets, as above described, all in the City of Little Rock, Pulaski County, Arkansas, to be held by the said Lina Davis as her sole and separate property, for her sole and separate use, to the exclusion of her present or any future husband she may have, and he, the said husband, is to have no interest or curtesy in any of said lands. And she, the said Lina Davis, shall have no power to sell, mortgage or dispose of the said property. And at the death of said Lina the said property shall go to her children and descendants, if any she have surviving her. And if she leaves no children or their descendants surviving her at her death, said property shall be divided equally between Lee F. Tirrill, or her heirs, if she be deceased, and the said children of my deceased daughter, Manda Walker, or their heirs, one-half of said interest to said Lee F. Tirrill or her descendants, and one-half to W. H. Walker and Cullen C. Walker, children of my deceased daughter, Manda Walker, and the portion thereof which goes to the said Lee F. Tirrill is to be held by her, as she is to hold the property which is conveyed to her direct herein, and with the same limitations and restrictions. The balance of my real estate not herein specifically described is to be divided at the death of the survivor of the parties hereto into three parts of equal value, one portion to go to W. H. Walker and Cullen C. Walker, and one portion to Lee F. Tirrill, to be held by her with the same limitations and restrictions, and in the same manner as the property herein specifically directed to be conveyed to her, and one portion to be given to Lina Davis, subject to like restrictions and limitations, and in the same manner as the property described above and directed to be conveyed to her. The party of the second part, trustee herein, may at any time after my death make deeds of conveyance to the beneficiaries herein for the said property which is given to them

herein, with the limitations and restrictions above set forth. And, should the said trustee die after the party of the first part, and before the executing of such conveyance, then, the purposes of this trust being answered, it shall be an executed trust, and the legal title to the property shall pass as declared in the trusts herein. But, should said party of the first part survive the party of the second part, then in writing he may appoint a new trustee to carry out the trusts herein declared, or he may in writing recall the trust herein declared and declare this deed null and void. In testimony whereof, I, C. G. Cribbs, have this day set my hand and seal to the above and foregoing. Done at Little Rock, Arkansas, the 15th day of July, 1898.

[Seal.]          "C. G. CRIBBS."

The deed was duly acknowledged and recorded.

The complaint alleged that Cullen G. Cribbs died, intestate, on January 23, 1901, leaving Katie G. Cribbs, his widow, and the other defendants and plaintiffs his only heirs. That Cullen G. Cribbs died seized of a large quantity of lands. That the deed of trust from intestate to Katie G. Cribbs, above set out, was never executed or delivered, but was found among his papers at his death, and was intended as a will. That, after death of said C. G. Cribbs, defendant Katie G. Cribbs fraudulently took said deed from intestate's safe, and filed it for record. That, after executing said deed, intestate remained in possession and control of the lands conveyed, selling and executing contracts of sale, and in the conveyances his wife joined and relinquished dower. That Katie G. Cribbs applied for orders of the probate court to carry out the executory sales made by intestate. That said deed was void because the limitations were contrary to the laws prohibiting perpetuities. That the conveyance was against public policy in attempting to convey all the lands said Cribbs might thereafter acquire, with no power of revocation unless he should survive Katie G. Cribbs. That said Cullen G. Cribbs acquired title to a part of lots 4, 5 and 6, block 78, City of Little Rock, described by metes and bounds, by deed of conveyance from Elizabeth Snipes, dated January 26, 1891. That prior to said conveyance to said Cribbs, to-wit: on March 3, 1888, said Elizabeth Snipes and W. H. Snipes, her husband, by a properly executed instrument, did lease and let said parcel of land to W. L. Reaves for the period of fifteen years from that date, at a rental of $20 per

month, payable at the end of each and every month; it being stipulated in said lease that at the expiration thereof the value of the building and improvements on said land should be ascertained by appraisers, and be paid by the lessor to the lessee in cash; and in default thereof the lessee should have power to occupy said premises free of rent until the amount of such appraised value should be consumed in rental at the rate stipulated in said lease. That said lessee has placed valuable improvements on said lands, the value of which, when ascertained according to the stipulations of said lease, will constitute a lien on said land; but plaintiffs aver that said Cullen G. Cribbs did not by accepting said deed, or otherwise, assume or become personally liable for the payment thereof, and that no part of his estate is or should be subject to the payment of said amount when so ascertained, unless it be the lands embraced in said lease. That the claim for the value of the improvements on said parcel of land at the expiration of said lease, plaintiff fears, will be made by the defendants, or some of them, against the personal estate, or the real estate, or the real estate other than that embraced in said lease, of said Cullen G. Cribbs, deceased.

Prayer was that the defendant, W. L. Reaves, his mortgagees and assigns, and any one for or in privity with him or them, be forever barred and precluded from setting up or enforcing any claim for the value of any improvements upon said lots so leased to him, against any of the estate, either real or personal, of which the said Cullen G. Cribbs died seized or which he owned during his lifetime. That said purported trust deed from said Cullen G. Cribbs to Katie G. Cribbs, trustee, be declared void and of no effect, and be set aside and cancelled, and that the title to all the lands attempted to be conveyed thereby, except lots 7 and 8 in block 31, City of Little Rock, be vested in his heirs at law hereinabove named, subject to the dower interest of the widow, Katie G. Cribbs, and that dower therein be assigned and laid off to her, and that the remainder of said real estate be divided and partitioned between the several heirs at law in proportion to their respective interests, and that the rents and profits on said lands for the period they may have been held by said defendant, Katie G. Cribbs, be ascertained, and that plaintiffs have judgment against her for their proper share thereof, and that the same be

declared a lien upon her life interest in such lands as may be set apart to her as dower.

Mrs. Tirrill demurred to the complaint on the ground "that the court has no jurisdiction of the subject of this action to partition the lands in said complaint described, because it is not shown, on the face of said complaint, that said lands are held in joint tenancy, tenancy in common or in coparcenary; but by an adverse legal title to that under which plaintiffs claim." The court overruled this demurrer. No motion was made to transfer the cause to the circuit court.

The answer of Mrs. Cribbs and others specifically denied the allegations attacking the validity of the deed.

Mrs. Lina Davis filed a separate answer, which she asked to be taken as a cross complaint, alleging that at the time said deed was executed it was understood by and between said Cullen G. Cribbs and Katie G. Cribbs that the former was liable and would pay for the improvements on lots 4, 5 and 6, in block 78, in accordance with the terms of the lease thereon from Elizabeth Snipes to W. L. Reaves, and for that purpose said Cullen G. Cribbs had accumulated the fund in bank which has come into the hands of the administratrix; that said Cullen G. Cribbs, in the purchase of said property from Elizabeth Snipes, assumed the liability contained in said lease to W. L. Reaves. Prayer that the value of said improvements be declared a charge and obligation on said estate, and that said administratrix be directed to pay therefor. No answer to this cross complaint was filed.

The decree was to the effect that the defendants acquired no rights in or to the property involved in this action, under the paper writing filed as an exhibit to the complaint and purporting to be a deed of trust, by C. G. Cribbs to Katie G. Cribbs, executed july 15, 1898; "that the same be held for naught, and is hereby declared to be of no validity or effect; that the prayer of the plaintiffs' complaint for partition of the lands belonging to the estate of the said C. G. Cribbs, deceased, be and the same is hereby denied, but without prejudice to the plaintiffs to institute another suit for the partition thereof, when it may be advisable and proper." The cross complaint of Mrs. Lina Davis was dismissed. All of the parties have appealed.

*Bradshaw & Helm,* for appellants.

The conveyance by Cribbs is a declaration of trust.   2 Wash. Real Prop. 387-459; 1 Sanders, Uses & Trusts, 30; Lewin, Trusts, 55; 22 L. C. P. (88 U. S.) 504; 7 N. Y. Ch. 640; 1 Perry, Trusts, 98; 10 Johns, 506; 3 Md. 505; 3 Jarman, Wills, 531; 1 Greenleaf, Cruise, Dig. 338; Bisph. Eq. 52; 2 Bouv. Dict. 753; 31 Ark. 400; 106 Mich. 572; 34 Mich. 419. Mrs. Cribbs can be both trustee and beneficiary.   62 Mich. 598; 63 Mich. 181; 1 Beach, Trusts, § 79; 109 Mass. 300; 141 Mass. 45. The instrument was delivered.   1 Perry, Trusts, 99; 118 Ill. 80; 1 Perry, Trusts, 106; Tiedeman, R. P. 812; 18 Wis. 139; 29 Wis. 104; 118 Ill. 80; 22 Ark. 488; 14 Ark. 286; 3 L. R. A. 299; 85 Ind. 252; 42 Am. Dec. 339; 97 N. Y. 13; 2 Barb. 176; 86 Ala. 270; 30 Miss. 97; 152 Ill. 336; 50 Ark. 367; 113 Mo. 165; 102 Ill. 622; 60 Texas, 291; 46 Texas, 572; 22 Ark. 488; 54 Pac. 162; 7 Ark. 505; 1 Ark. 83; 6 Ark. 109; 160 Penn. 336; 24 S. W. 626; 71 Pac. 221; 85 N. W. 576; 66 S. W. 382; 18 So. 433; 12 So. 598; 29 Atl. 848; 43 N. E. 729; 93 Ill. App. 647; 61 N. Y. Sup. 542; 60 N. E. 1119; 20 N. Y. 170; 30 Ind. 195; 36 Mich. 229; 24 Tenn. 411; 2 McA. 362; 7 Am. Dec. 350; 7 N. Y. Ch. 640; 20 Fed. 455; 88 U. S. 185; 19 L. R. A. 242; 41 Ia. 344; 76 Texas, 239; 36 Minn. 276; 12 L. R. A. 171; 15 Wend. 545; 75 Cal. 240; 88 Ill. 379; 58 Pac. 139; 114 Ind. 254; 16 Ia. 483; 41 Ia. 334; 6 Minn. 64; 37 Mich. 264; 27 So. 595; 20 Atl. 543; 109 Mass. 581; 1 Johns. Ch. 240, 324; 68 Ia. 619; 78 Me. 427; 41 Ia. 334; 11 Ind. 92; 42 Fed. 381.   Mutual delivery is unnecessary in voluntary settlements.   65 Barb. 608; 7 N. Y. Ch. 640; 2 Gilm. 557; 152 Ill. 340; 1 Perry, Trusts, 103; 56 N. J. Eq. 199; 2 Wash. R. P. 392. The instrument was an absolute deed, and not a testamentary instrument.   19 L. R. A. 242; 97 N. Y. 13; 68 Ia. 619; 36 N. Y. 477; 58 Pac. 139; 29 Atl. 848; 18 So. 433; 12 So. 598; 49 Fed. 126; 86 Cal. 471; 97 N. Y. 13; 14 Ore. 405; 52 Atl. 100; 59 Pa. St. 9; 118 Ill. 80; 50 Ark. 367; 21 Ark. 526. The deed of trust was not void because it reserved to the grantor a power of revocation.   2 Washburn, Real Prop. 301; 11 L. R. A. 422; 10 B. Mon. 397; 2 Black, 156; 17 Ark. 483; 31 Ark. 678; 52 Ark. 65; 8 Ark. 302; 15 Ark. 328; 17 Ark. 154; 31 Ark. 400; 1 Sand. Uses & Trusts, 155; 4 Kent. 323; 1 Sug. Pow. 216; 18 Am. & Eng. Enc. Law, 980, 986; 2 Wash. R. P. 650; 27 Am. & Eng.

Enc. Law, 319; 19 Fed. 677; 31 Ark. 400; 12 Gray, 232.; 115 Pa. St. 198; 142 Pa. St. 158; 101 U. S. 225; 112 Ill. 344; 1 Beach, Tr. § 80.` The deed was not invalid for want of a revenue stamp. 24 Ark. 326; 26 Ark. 398.

*John McClure,* for Tirrill, appellant.

Where the grantor is as much interested in the preservation of the deed as the grantee, the fact of the deed being found in the custody of the grantor, after his death, raises no presumption that the deed was not delivered.   15 Wend. 547; 7 Ark. 505; 106 Pa. St. 342; 29 Atl. 848; 46 Texas, 571; 93 Ill. App. 648; 106 Ga. 785; 52 Fed. 419. The deed would pass the estate if there had been no delivery.  Lewin, Trusts, 74.  A request by the grantor not to have the deed recorded until after his death will not keep the title from passing, nor constitute a suspicious circumstance. 71 S. W. 271; 68 Ia. 622; 18 Wis. 147.  The operation of the deed was not postponed by the request of Cribbs. 114 N. Y. 311. The power of revocation reserved in the deed did not prevent the title from passing.  181 Ill. 60; 12 Gray, 232.  The question of delivery is one of law.  67 Cal. 552; 1 Devlin, Deeds, § 308.  An estate *in presenti* passed to Mrs. Cribbs.  50 Ark. 367; 2 Beas. 458; 22 Ark. 488; 14 Ark. 286; 102 Ill. 629; 19 Ark. 429.  The intention to pass title may be inferred from acts of the grantor. 37 Mich. 268.  The fact that the grantor remained in possession and sold some of the lands raises no presumption that the estate did not pass.  31 Ark. 405; 17 N. J. Eq. 351.  Possession of the *cestui que trust* is the possession of the trustee.  1 Ired. Ch. 425; 1 Perry, Trusts, § 18; Wash. R. P. § 1500; Lewin, Trusts, 18. The revenue stamps being affixed to the deed in accordance with the act of Congress, the deed is valid as though stamped before delivery.  24 Ark. 327; 26 Ark. 398.  The deed is not obnoxious to the rule against perpetuities, and is not in restraint of aliena- tion.  Gray, Perp., § § 232, 205, 322, 323; 91 N. W. 103.  A per- petuity is an indestructible and inalienable interest, and can not exist where the conveyance passes an estate *in presenti*.  170 Ill. 74; 121 Pa. St. 206; 89 Me. 360; 185 Pa. St. 179.  The instru- ment executed was not a will.  1 Jarm. Wills, 18, 48; Schouler, Wills, 301; Underhill, Wills, § 37; 50 Ark. 371.  A grantor will not be allowed to undermine his deed by acts and declarations

made after delivery of the deed. 98 Cal. 452; 1 John, Chy. 940. The reservation of a life estate to the grantor does not make an instrument a will. 21 Ark. 526; 103 Pa. St. 20. The power of revocation in an instrument negatives the idea of a will. 109 Cal. 326; 59 Ala. 349. Where the instrument contains the language of a deed, it will not be construed into a will. 46 Texas, 571; 94 Ga. 160. The demurrer to the jurisdiction of the court should have been sustained. Sand. & H. Dig. § § 6120, 6121; 56 Ark. 399; 23 Ark. 758; 27 Ark. 417; 23 Ark. 74; 93 Mo. 71; 43 N. J. Eq. 633; 44 Ark. 437; 43 Ark. 28; 37 Ark. 643; Pom. Eq. Jur. § 1339; 30 Ark. 585; 26 Fed. 888; 54 Barb. 258.

*Ratcliffe & Fletcher,* for Lina Davis and W. L. Reaves, appellants.

The cross complaint of Lina Davis and W. L. Reaves should have been sustained. Tied. Real Prop. § 181; 55 Wis. 177. The consideration mentioned in the deed was a valid one. 8 Texas, 191; 1 Story, Eq. § 781; 6 Conn. 111; 1 Johns. Ch. 240, 329; Thornton, Gifts, § 402; 106 Mich. 572. The only court that can grant appellants Davis and Reaves relief on account of improvements made by them is equity. 13 Ark. 59; 68 Ark. 449; 40 Ark. 433; 15 Ark. 412; 18 Ark. 334; 14 Ark. 253; 18 Ark. 118; 32 Ark. 714.

*Dan W. Jones, Arthur Neill* and *Cantrell & Loughborough,* for appellees.

Mrs. Cribbs was never in possession of the property as trustee, but as administratrix. Sand. & H. Dig. § 80; 34 Ark. 394; 21 Ark. 64; 31 Ark. 579; 42 Ark. 28; 14 Ark. 148; 32 Ark. 399; 79 S. W. 1051; 39 Ark. 579; 7 Ark. 520; 8 Ark. 9; 52 Ark. 1. Ejectment is a possessory action. 50 Ark. 551; 41 Ark. 465; 29 Ark. 620. Defendants waived a trial at law. 57 Ark. 589; 37 Ark. 186; 79 S. W. 776; 31 Ark. 422; 32 Ark. 562; 51 Ark. 259; 49 Ark. 20. The complaint alleges grounds for equitable jurisdiction independent of the question of possession. 1 Perry, Trusts, § 167; Bispham, Eq. § § 197, 100; Tied. Eq. § § 123, 142, 222; 1 Pom. Eq. § 138; 32 Ark. 490; 14 Ark. 345; 33 Ark. 429; Bisph. Eq. § § 295, 296; Story, Eq. Jur. § 120. Delivery of the deed was necessary to pass title. 24 Ark. 246; 1 Perry,

Trusts, § 103; 14 Ore. 82; 116 Pa. St. 93. The trustee did not assent to or accept the deed; acceptance was necessary. 47 Ark. 320; 36 Ark. 405; 14 Wall. 139. The manual delivery was simulated; actual possession and control were never surrendered by the grantor, or intended to be surrendered, and no title passed by it. 14 Ore. 87; 3 Wash. R. P. 293; 108 Ill. 342; 59 Ark. 611; 62 Ark. 26; 37 Kan. 145; 17 C. C. A. 479; 34 N. H. 475; 98 Cal. 446; 30 Wis. 650; Tied. Real Prop. 813; 99 Ind. 28; 63 Mich. 111; 1 Am. & Eng. Dec. Eq. 365; 20 Atl. 41; 24 N. E. 1036; 23 N. E. 378; 135 Ill. 137; 111 Ill. 563; 158 Ill. 567; 118 Mass. 155; 66 Me. 316; 65 Mo. 689; 67 Me. 559; 6 Conn. 111; 20 Wend. 44; 40 Ia. 406; 57 Miss. '843; 120 Ind. 164; 30 N. E. 1041; 88 Mich. 650; 14 N. J. L. 137; 3 Greenl. 141; 58 Am. Dec. 610; 150 Ill. 40; 126 Ind. 62; 167 Ill. 631; 3 Wall. 636; 67 Cal. 547; 30 Wis. 644; 34 N. H. 460; 96 Cal. 223; 2 Abb. Pr. 159; 105 Mass. 560; 5 Ired, 505; 16 Pet. 106. The question of delivery is one of fact, and not of law. 36 Minn. 276; 135 Ill. 140; 42 N. J. L. 279; 67 Cal. 547; 118 Mass. 155; 67 S. W. 123; 55 S. W. 310; 5 Cal. 315; 13 Mo. App. 114; 40 N. H. 73; 1 Watts, 278; 11 Atl. 611; 11 Vt. 621; 58 Vt. 353; 16 S. C. 631; 60 Texas, 295; 98 Cal. 446. The finding of the chancellor upon the question of delivery will not be disturbed by this court unless clearly erroneous. 44 Ark. 219; 62 Ark. 615. The trust deed was void as against public policy. 35 Ark. 17; Perry, Tr. § 104; 24 N. J. Eq. 243. The trust was void because contrary to the law against perpetuities. 165 U. S. 342; Perry, Tr. § 381; 1 Redf. 409; 165 U. S. 566; Perry, Tr. § 381; 1 Martin, Ch. Dec., 10; 58 Ark. 313; Perry, Tr. § § 98, 99; 105 N. Y. 135.

*Bradshaw & Helm,* for appellants in reply.

The law makes stronger presumptions in favor of the delivery of deeds in cases of voluntary conveyances than in ordinary cases of bargain and sale. 1 Warv. Vendors, § § 498, 503; 62 Ill. 348; 119 Ill. 242. The fact that after delivery the deed has been returned to the grantor, and by him retained, neither negatives nor disproves its delivery. 1 Warv. Vendors, § § 505, 507; 104 Mo. 201; 172 Mo. 118. The power of revocation reserved in the deed did not prevent the title from passing. Thornton, Gifts, 437, 425, 104, 392; 70 N. E. 89; 101 U. S. 225; 14 Fed. 35.

McCULLOCH, J.   A decision of this case involves an inquiry
(1) as to the character and effect of the instrument in question
executed by Cullen G. Cribbs, whether it be a deed conveying the
property in trust, as it purports on its face to do, or a testa-
mentary paper intended to take effect at the death of the testator; ·
(2) if it be found to be a deed, and not a testamentary paper,
whether the same was delivered by the grantor so as to become
effective; and (3) whether the court below had jurisdiction of the
subject-matter of the suit, so as to grant the relief sought by the
prayer of the complaint.

1.   Is the instrument in question a deed, or a testament?

This court in the case of *Bunch* v. *Nicks,* 50 Ark. 367, said:
"To determine the character of an instrument, as to its being a
will or a deed, it is necessary to ascertain the intention of the
maker from the whole instrument, read in the light of surround-
ing circumstances.   If the intention at the time of the execution
of the instrument was to convey a present estate, though the pos-
session be postponed until after his death, it is a deed; but if the
intention was that it should not convey any vested right or inter-
est, but should be revocable during his life, it is a will."   Citing
*Jordan* v. *Jordan,* 65 Ala. 301; *Williamson* v. *Tolbert,* 66 Ga. 127.
In that case (*Bunch* v. *Nicks*) the grantor conveyed his prop-
erty, real and personal, to certain of his children by instruments
purporting to be deeds, containing the following words, viz:
"And the same shall not be sold or alienated until the youngest
child shall arrive at the age of twenty-one years, and the deed
shall go into full force and effect at my death."   The court held
that such instrument was not a will, but a valid deed, conveying
a present title to the grantee with the right to possession and use
postponed until the grantor's death.   The court, speaking through
Mr. Justice BATTLE, said:   "It is obvious that the intention of the
donor was to give his property to the children mentioned in the
deeds, reserving the right to use and hold the same, and to enjoy
the profits thereof during his life.   The evidence of this intention
afforded by the instruments themselves, are:   1.   The form is
that of a deed, the words 'grant, bargain, sell and convey' used
being appropriate to the office of the deed, and inappropriate to
a will.   2.   They contain a covenant of warranty, whereby the
donor agrees to forever warrant and defend the title to the land
to the donees and their heirs and assigns against all lawful claims

whatsoever. 3. The donor himself calls them deeds of convey-
ance; and it is unreasonable to suppose he would call what he
intended as a will deeds of conveyance. 4. They were executed,
delivered and acknowledged as deeds. The only words used in
them that can be said to be evidence of an intention to make a
will are, 'and the *deed* shall go into full force and effect at my
death.' But we are to construe these words in connection with
the whole deed. Every part must have its effect, if the same can
be done consistently with the rules of law. Construed in this way,
it was evidently the intention of Nicks to give the land and sell
the personal property he had at the time they were executed to
the grantees, and to reserve the use and enjoyment thereof for
and during his life."

The only marked difference between the instrument under
consideration and the Nicks deed, so far as it may distinguish it
as a deed from a will, are the clauses reserving to the grantor
the right to direct the disposal of the property and the right of
revocation in the event of the predecease of the trustee. Do these
necessarily stamp the instrument as a will?

In *Nichols* v. *Emery,* 109 Cal. 323, it was held that where
the owner of real property conveyed it to one of his sons, as
trustee, upon trust to sell the land within two months after the
death of the grantor, and to divide the proceeds among children
of the grantor, including the trustee, and reserved in the convey-
ance a power of revoking the trust, but continued in possession of
the land during the remainder of his life, without revoking it,
such conveyance immediately passed a vested interest to the
trustee, who took the whole estate necessary for the purposes of
the trust, there remaining in the grantor the equivalent of an
estate for his own life, and entitling him to remain in possession
of the land or to lease it and retain the profits; and that the
power of reservation contained in the instrument did not operate
to destroy or change its character, or to make it a will or testa-
mentary disposition of his property. The court said: "And the
fact that he reserved the right to revoke did not impair the trust,
nor affect its character, since title and interest vested, subject to
divestiture only by revocation; and if no revocation was made,
they became absolute. A man may desire to make disposition of
his property in his lifetime to avoid administration of his estate
after death. Indeed, in view of the fact, both patent and painful,

that the fiercest and most expensive litigation, engendering the bitterest feelings, springs up over wills, such a desire .is not unnatural. And when it is given legal expression, as by gifts absolute during life, or by gifts in trust during life, or voluntary settlements, there is manifest, not only an absence of testamentary intent, but an absolute hostility to such intent." See also *Stone v. Hackett,* 12 Gray, 232; *Hall* v. *Burkham,* 59 Ala. 349; *Ricketts v. Louisville,* etc., *Railway Co.* (Ky.), 11 L. R. A. 422; *Wall* v. *Wall,* 30 Miss. 93; *Abbott* v. *Holway,* 72 Me. 298.

The case of *Hall* v. *Burkham,* above cited, is especially instructive, the instrument involved being almost identical with the one under consideration here in every essential feature, and it was held to be a deed, and not a will. The court there said: "The argument that it is a will is founded chiefly upon the provisions by which Mrs. Hall reserved the possession and use of the property during her life, and a power to revoke the instrument. According to numerous decisions of this and other courts, the former of these provisions does not by itself produce the effect contended for. And in regard to the power of revocation, the better opinion is that it tends rather to rebut than to sustain the idea that the instrument containing it is of a testamentary character."

Says Mr. Jarman: "But, as already observed, an instrument is not testamentary merely because actual enjoyment under it is postponed until after the donor's death. If it has present effect in fixing the terms of that future enjoyment, and therefore does not require the death of the alleged testator for its consummation, it is not a will." 1 Jarm. on Wills, p. *25.

"A deed may be executed and retained in the possession of the grantor or some other person, as an escrow, to be delivered to the grantee upon the death of the grantor. Thus, an instrument having the form of a deed, signed, sealed and acknowledged by a grantor on his deathbed, and handed to the attending physician to be kept by him until the death of the grantor, when it is to be recorded, is a deed, and not a will." 1 Underhill on Wills, p. 54; *Stout* v. *Rayl,* 146 Ind. 379.

In *Kelly* v. *Parker,* 181 Ill. 49, an instrument was construed almost identical with the one here, and it was held to be a deed, and not a will. It contained a reservation expressly permitting the grantor to "use, occupy, manage, control, improve and lease,

for any term or terms of years, said real estate, or any part there-of, in any manner and for any purpose he may desire," also reserv-ing to him "full power and authority, during his natural life, to let, demise, mortgage, sell and convey said real estate or any part or portion thereof, upon such rents, consideration, terms, trusts, conditions and estates, in fee or any less estate, or for years, and to such effect as he shall desire, and upon trust to permit him so to do," and also reserving "full power and authority, at his option, by an instrument in writing, executed under his hand and seal, to revoke this conveyance and all the powers and trusts hereby created." The court said: "It is said the grantor did not intend that the deed should take effect until after his death. The deed contains no such provision. The words of the grant are *in pre-senti,* and where such is the case, upon a delivery of the deed the title to the premises will pass to the grantee. Had this deed declared that the title to the premises should not pass until the death of the grantor, a different question might be presented. But such is not the language or import of the deed in question; but, on the other hand, it purports to convey the premises abso-. lutely to the grantees at the time the deed was executed, subject to certain reservations, conditions and trusts incorporated." Citing *Shackelton* v. *Sebree,* 86· Ill. 616; *Harshbarger* v. *Carroll,* 153 Ill. 636. .

In our opinion the form and language of the instrument clearly indicate the intention of the grantor to convey the legal title *in presenti.* . It contains apt words of conveyance usually employed in a deed of conveyance, and the reservation to the grantor of the use during his life and the right to direct a con-veyance to be made by the trustee to other parties and to recall or revoke the trust, all, instead of showing an intention to make the instrument a testamentary paper to take effect only at his death, imply an immediate passage of the title. If Cribbs intended the paper to be a will, and retained it in his possession as such, why the necessity of incorporating those reservations in the instru-ment? If it was not to take effect until his death, the reser-vation of the life estate and right to direct a sale and to revoke the trust was useless, as under a will he possessed those rights and powers, and more, without such express reservation.

We conclude, therefore, that the instrument was a deed which, if delivered so as to become effective, conveyed the legal title in trust for the purposes therein set forth.

2. The next question presented is whether or not the deed was delivered so as to become effective. The question of delivery of a deed is one of intention of the grantor, as manifested by his acts or words, or both. 9 Am. & Eng. Enc. Law, p. 154, and cases cited.

It is shown that the grantor employed to prepare the deed Judge Sam. W. Williams, now deceased, a profound lawyer of wide experience, and especially learned in the law governing titles to real estate, and conveyances thereof; that he acted upon the advice of his attorney, not only as to the form of the conveyance, but also as to the details of a delivery. Mrs. Cribbs testifies that he delivered the deed to her, and said: "Kate, here is this deed of trust: now, read it over; to my judgment I think that is the proper thing." That she read it over, and it was agreed that Mr. Cribbs should take the deed, and put it away in his safe, where it should remain until his death. It is true that her testimony is somewhat equivocal and confusing as to what they (she and her husband) thought about the effect of the deed, and as to his statements of his intention concerning the immediate effect of the conveyance, whether it took effect only at his death or vested the title immediately with a postponement of the enjoyment until his death; but a perusal of the whole of her testimony shows that she intended to express the meaning that the delivery was complete. It is evident, we think, that, acting under the advice of his attorney, Mr. Cribbs, did everything he could by delivering at that time to effectuate the conveyance. In other words, that he handed the deed to his wife, the grantee therein, with intent to accomplish a legal delivery, and to put into full operation the trust created by the terms of the deed.

Mr. Bradshaw testifies that Cribbs told him that he had delivered the deed to his wife as Judge Williams had advised him. This testimony, as a self-disserving statement, was competent against him or those who claim under him adversely to the deed.

There is no testimony disputing the delivery of the deed, unless we find something in the conduct of the parties which rebuts the idea of any intention to deliver. Stress is laid upon

the fact that the deed was found among the effects of the grantor after his death, which, it is said, raises a presumption against delivery. This presumption does not arise where the grantor reserves an interest in the property conveyed, and therefore has an interest in the preservation of the deed. *Blakemore* v. *Byrnside,* 7 Ark. 505; *Scrugham* v. *Wood,* 15 Wend. 547; *Turner* v. *Warren,* 160 Pa. St. 342; *Cummings* v. *Glass,* 29 Atl. Rep. 848; *Allen* v. *Hughes,* 106 Ga. 785; *Wall* v. *Wall,* 30 Miss. 97. But such presumption, even when it applies, is not absolute and conclusive, but only *prima facie,* and subject to be rebutted by positive proof of a delivery. 4 Kent, Com. 455; *Chambers* v. *Henry,* 93 Ill. App. 648; *Hart* v. *Rust,* 46 Texas, 571; *Wall* v. *Wall, supra; Brooks* v. *Isbell,* 22 Ark. 488. There is nothing else, we think, in the conduct of the grantor to negative any intention to immediately pass the title, or to rebut the proof of delivery. His retention of possession and control of the property conveyed was consistent with his reserved rights under the deed, and his failure to record the deed and causing his wife to join him in the execution of deeds in ordinary form, instead of having her convey as trustee, was pursuant to his purpose to keep the conveyance secret until after his death. He had a right to do this, and nothing is found in the law to prevent him from accomplishing, by the execution of a deed immediately conveying the legal title in trust, the same result which could be secured by a will, if he adopted the proper form and legal method. We think he did this by the execution and delivery of the deed in controversy.

3. It is further contended that the conveyance is void because contrary to the rule against perpetuities. The words "children and their descendants,' 'employed in the deed, refer to those surviving at the time of the death of the children of the grantor, and bring the case within the rule that the power of alienation may be postponed for the period of a life or lives then in being.

4. The jurisdiction of the chancery court is challenged upon the ground that the complaint shows that the plaintiffs were not in possession of the lands, and that the suit should have been transferred to the law court. The primary object of the suit is to cancel the deed executed but not delivered by C. G. Cribbs, which, it is alleged, the defendant, Katie G. Cribbs, fraudulently took from the safe of the deceased and filed for record. The recovery

of possession and partition of the lands are incident to the main relief sought. Jurisdiction of the chancery court is asserted to cancel the deed, upon the ground that one of the defendants, by her fraudulent act, procured and placed of record a deed purporting to have been executed and delivered by plaintiffs' ancestor, which, on its face, barred their right of recovery. It may be conceded that in a suit at law for possession proof could have been introduced to show that the deed had never been delivered, but does that prevent an exercise of jurisdiction by a court of equity on account of the fraud? Where one has procured a conveyance by fraud or duress or other unfair means, that can be shown at law to avoid the conveyance; nevertheless, a court of equity will interpose to relieve from the fraud.

This court, speaking through Mr. Justice Wood, in *Maloney v. Terry*, 70 Ark. 189, of the jurisdiction of a court of equity to grant relief where a trust relation is set up, and where it is shown that money has been obtained through fraudulent representations, said: "Having jurisdiction of the subject-matter, it does not have to give it up because a court of law could also give complete relief." Citing *Bently v. Dillard*, 6 Ark. 79, and *Hempstead v. Watkins*, 6 Ark. 317, as to concurrent jurisdiction of courts of law and of equity.

Ordinarily, a court of chancery will not assume jurisdiction to remove a cloud upon title, or to make partition where the lands are held adversely by the defendants, and the plaintiff has the legal title, because in that case the plaintiff has a complete and adequate remedy at law, and equity will not interpose merely to try the title. But where primarily the relief sought is such as is peculiarly within the established powers of courts of equity to grant, such as fraud or misconduct of one standing in a relation of trust, then the jurisdiction will be assumed and exercised, even though further relief of a purely legal nature is asked as an incident. *Apperson v. Ford*, 23 Ark. 746; *McGaughey v. Brown*, 46 Ark. 25; 3 Pom. Eq. Jur. § 1399; *Kennedy v. Northup*, 15 Ill. 149; *Redmond. v. Packenham*, 66 Ill. 434; *Booth v. Wiley*, 102 Ill. 84; *Pier v. Fond du Lac*, 38 Wis. 470; *King v. Carpenter*, 37 Mich. 363.

In *Apperson v. Ford, supra*, this court said: "Relief against a deed alleged to be fraudulent has been held to be a proper case

for equitable' jurisdiction, though fraud is examinable at law as well as in equity."

In *McGaughey* v. *Brown, supra,* Chief Justice Cockrill, said: "There is no mistaking the object of the bill. It seeks to establish title to the lands in the appellees; and, that being accomplished, to reap the advantages that follow ownership, *i. e.* possession. * * * It was competent for equity to grant the full measure of this relief. It frowns upon a multiplicity of suits, and where the appellees had successfully invoked its aid to invest them with the legal ·title, it would not then remit them to an action at law to recover possession; but, having taken jurisdiction of the case for its own exclusive purposes, it would retain the cause to administer the legal after the equitable relief."

This does not conflict with the doctrine stated in *Ashley* v. *Little Rock,* 56 Ark. 391, where it was held that persons in possession of lands could not be joined as defendants in a suit in equity by the plaintiff against another defendant for specific performance, where such parties in possession held adversely, and not in privity with the plaintiff or other defendant.

The jurisdiction of the chancery court in this case must be sustained for another reason. The appellees have sought the jurisdiction of that court for relief, and can not complain if it is exercised against them, the court having the jurisdiction of the subject-matter and of the parties. It is not a case where there is such a lack of jurisdiction of either the parties or subject-matter as the parties can not waive. Where a suit is improperly brought in equity, it should not, on that account, be dismissed, but should be transferred to the law court; and if no motion is made to transfer the cause, the objection is waived. *Apperson* v. *Ford,* 23 Ark. 746; *Talbot* v. *Wilkins,* 31 Ark. 411; *Moss* v. *Adams,* 32 Ark. 562; *Organ* v. *M. & L. R. Ry. Co.,* 51 Ark. 235; *Harris* v. *Townsend,* 52 Ark. 411; *Love* v. *Bryson,* 57 Ark. 589; Works, Jurisdiction, p. 115.

Now, if defendants are held to have waived the jurisdiction of the chancery court in such instance by submitting to a trial of the issues there without objection, and without asking for a transfer, a plaintiff who voluntarily seeks such jurisdiction must be held bound by its exercise.

The decree is therefore reversed, with directions to enter a decree dismissing the complaint for want of equity.

HILL, C. J., (dissenting), Mr. Justice BATTLE and I are of the opinion that the complaint herein lacks every element of equity jurisdiction. The defendants by demurrer promptly met this question, and we are of opinion that the chancellor erred in overruling it, and for that reason the case should be reversed, and the cause either dismissed or a transfer to a court of law had, as the parties might. elect.

The determining question in this case is one of fact, which should be submitted to a jury. I am of opinion that, while the instrument is a deed on its face, yet the evidence shows that it was not intended to operate as a deed, but was essentially a testamentary disposition of the property through the legal formalities of a deed. In other words, the evidence convinces me that this instrument was not intended to have any effect as a deed, but to be brought into life only when the grantor died, as a disposition then to be had of his estate.

ON REHEARING.

Opinion delivered February 4, 1905.

McCULLOCH, J. Mrs. Lina Davis, one of the appellants and one of the defendants below, on petition for rehearing, calls attention to the failure of the court to consider the questions raised by her cross . complaint, which was dismissed by the chancellor for want of equity.

The case was determined here upon the theory that the cross complaint was withdrawn before the trial below, but on further inspection of the record we find that the same was renewed, as claimed in the petition for rehearing. We therefore proceed to determine the issues therein raised.

The renewal of the cross complaint was made at the time of the presentation of the case below, and the court proceeded to a hearing without requiring an answer thereto. However, proof was taken directed to the issues thereby, and the failure of the cross complainant to require an answer is held to be a waiver thereof. *Pembroke* v. *Logan,* 71 Ark. 364.

It is not proved that Cullen G. Cribbs assumed the payment of the incumbrance created by the lease to Reaves. W. H. Snipes, the husband of Cribb's grantor, who leased the property to Reaves, made the assertion in his testimony that Cribbs assumed the obligation of carrying out the lease to Reaves, but on cross examination he qualified his statement by saying that he had no personal knowledge of the fact, and had no information concerning it except what his wife had told him. Mrs. Cribbs testified that at the time of the execution of the deed and afterwards, up to a short time before his death, Mr. Cribbs expressed his desire for the payment of the incumbrances on the property leased to Reaves out of his funds in bank. She says it was understood, when the deed was executed, that he would pay off the incumbrance, and afterwards he mentioned it to her several times.

No reference to the incumbrance is made in the trust deed executed by Cribbs, and no definite agreement concerning the same, either verbal or written, has been shown in the record. We are asked to hold that, by reason of the gift by Mr. Cribbs to his daughter, Mrs. Davis, of the real estate, an obligation on his part to remove the incumbrance thereon will be implied and enforced against his estate. In support of this proposition, we are cited to the doctrine stated in Thornton on Gifts, § 402, to the effect a "donee of land takes it without the incumbrances thereon," though the donor "may, by express words or the like, give the land subject to the incumbrance, or make it a consideration of the gift." The single case cited by the author does not support his statement of the law, and we have been unable to discover any decision holding to that rule. We cannot subscribe to that doctrine, for it seems to us plain, upon principle, that no obligation to remove an incumbrance should be implied from a gift of the incumbered premises. We think it more consonant with sound reason and justice that, in the absence of any express agreement to the contrary, the donee takes the property with the incumbrance, free from any obligation on the part of the donor to remove the same.

It is also contended by learned counsel that the testimony establishes an agreement on the part of Mr. Cribbs to pay off the incumbrance out of his funds in bank. If it be conceded that there was a consideration for the alleged agreement, or that the same without consideration was enforcible, we think that the

proof falls far short of such definite and specific agreement as is sufficient to engraft upon the deed of gift executed by Mr. Cribbs an obligation to remove the incumbrance.    It appears to us that his statements concerning that matter gave expression only to a parental design on his part which doubtless he would have carried into effect if he had lived until the incumbrance had matured by expiration of the lease, but which is wholly insufficient to create an enforcible obligation.    It lacks entirely the elements of a contract, such as calls for enforcement by a court of equity.

Courts cannot enforce such expression of benevolent designs, however meritorious the purpose may be, unless put in such definite shape that can be laid hold of with certainty.    As no mention was made in the former judgment of this court considering the cross complaint, judgment will now be entered affirming the decree of the chancellor, in so far as the cross complaint was dismissed for want of equity.