## FAULKNER v. FEAZEL.

Opinion delivered June 1, 1914.

1. EJECTMENT—EQUITABLE TITLE—LEGAL RIGHT TO POSSESSION.—The equitable title to land, coupled with the legal right to possession, is sufficient to maintain an action of ejectment. (Page 294.)

2. DEEDS—DELIVERY—INTENT OF GRANTOR.—Any disposal of a deed, accompanied by acts, words or circumstances, which clearly indicate

that the grantor intends that it shall take effect as a conveyance, is sufficient. Manual delivery is unnecessary. (Page 294.)

3. DEEDS—DELIVERY—TEST.—The test of whether a deed has been delivered is whether the grantor by his acts, words, or both, intended it as a delivery. (Page 294.)

4. DEEDS—DELIVERY—KNOWLEDGE OF GRANTEE.—A deed from a husband to his wife will be treated as delivered, when the deed is highly beneficial to the wife, and imposed no burdens upon her, where the consideration recited was five dollars, which if not paid was not required to be paid, where the deed was found after the husband's death under lock and key and in a receptacle containing the wife's valuable papers, even though it appear that the wife had no knowledge of the existence of the deed until after her husband's death. (Page 295.)

Appeal from Howard Circuit Court; *Jefferson T. Cowling*, Judge; affirmed.

### STATEMENT BY THE COURT.

This was a suit in ejectment brought by W. P. Feazel, J. I. McNutt and D. B. Sain against appellants to recover a certain half section of land situated in Howard County. Both parties claim title from the same source, one, G. W. Faulkner. There was a jury trial and verdict and judgment for appellees, from which judgment appellants prosecuted this appeal.

The complaint alleged that plaintiffs were the owners of the land, and derived their title thereto as follows: One G. W. Faulkner conveyed said land in fee simple to his wife, Eliza Faulkner, and that thereafter the said Mrs. Faulkner by her will devised the same to J. I. McNutt, and a copy of the said will is exhibited with the complaint; and that McNutt thereafter deeded a one-half interest to Feazel and Sain. The complaint further alleged that defendants were in the unlawful possession of said land and had been for a period of one year, and there was a prayer for judgment for the possession of the land, and damages for its detention.

Defendant's answer admitted the ownership of G. W. Faulkner, but denied that he deeded the same to his wife,

and denied that Eliza Faulkner had willed the same to McNutt, and denied that said will had been probated, and that the copy attached to the complaint was a true copy of her will, and denied that McNutt had conveyed any interest in the land to his co-plaintiffs, and alleged that if G. W. Faulkner executed any deed to such land, and if plaintiffs have such deed, then they state that it is not the deed of said Faulkner but is a forgery, and that if said Faulkner did execute a deed to his wife that it was never delivered and did not pass any title to her because he retained the same in his possession, until his death, and never authorized any one to deliver it. The answer further alleged that when the said G. W. Faulkner died he left surviving him his widow, Eliza, and the defendants, who were his sons and sole heirs at law, and that the said Eliza had since departed this life, and by reason of her death the defendants succeeded to the title to said land.

The original deed from G. W. Faulkner to his wife was introduced and read in evidence, and appears to have been dated March 5, 1904, and to have been recorded the 23d day of February, 1911. The execution of the deed by McNutt to his co-plaintiffs was admitted. The record of the probate court was produced and read in evidence, showing the will of Mrs. Faulkner to have been probated.

The evidence upon the part of the appellants was to the effect that certain alterations had been made in the deed from Mr. Faulkner to his wife; but it appears to be undisputed that Faulkner did execute and acknowledge the deed to his wife conveying the land in controversy. The justice of the peace who took the acknowledgment testified that the whole body of the instrument was in his handwriting, except the signature of the grantor, but that the interlineations in the deed, consisting in part of the description of an additional tract of land, was not in his handwriting and that he did not know who placed those words in the deed. It was not contended, however, that Mrs. Faulkner had made these changes, for it was shown that she could neither read nor write; nor was it con-

tended that she was instrumental in having these changes made; but, upon the contrary, appellants contend that the proof fails to show any delivery of the deed to her, or any knowledge upon her part of its execution, until after the death of her husband. This deed was in the possession of appellants from the date of Eliza Faulkner's death until the institution of this suit. Indeed, the real question in the case is whether or not Mr. Faulkner had ever delivered the deed to his wife with the intention that it should take effect as such. Mrs. Faulkner died before this litigation was commenced, and the intention of her husband, in regard to the delivery of the deed to her, can only be ascertained from the facts and circumstances in proof.

It appears that Mr. Faulkner was a man above the average in intelligence and experience, and that he had considerable knowledge of land descriptions, and the essentials of a deed, and that he owned other land in addition to the land in controversy. It appears that both Mr. Faulkner and his wife kept their deeds and other valuable papers in a bundle of papers tied up with a string, in a trunk, which belonged to Mr. Faulkner, but that they both had access to this trunk freely. After the death of Mr. Faulkner, his wife requested his nephew to look through these papers, found in the trunk, and get out for her a deed referred to as the Burgess deed, which conveyed another tract of land to Mrs. Faulkner. This deed was found in the bundle of papers in the trunk, along with the deed in controversy. There was evidence tending to show that Mrs. Faulkner had no knowledge of this deed, until after the death of her husband, and that she undertook to make a division of the estate of her husband with the appellants. A lady, who lived with the Faulkners during their lifetime, and who had been reared by them, testified she heard a conversation between them in which Mr. Faulkner made the statement to Mrs. Faulkner that he had deeded her the land in controversy, so that he could homestead some more, and that she did not know the description of the land in the deed

as she did not read it. She had seen the deed, and said it was put in this trunk to which Mrs. Faulkner carried the keys. And this witness also testified that Mr. Faulkner stated that he wanted his wife to stay on the land and "use it during her life, and at her death he wanted the two boys to have it."

The order of the probate court admitting Mrs. Faulkner's will to probate was not appealed from, and it is not now insisted that she did not devise the land to McNutt. Appellants appeared in the probate court and protested against the probate of said will, but abandoned their contest, after the probate court ordered the will probated.

*W. D. Lee, J. M. Jackson* and *Steel, Lake & Head,* for appellants.

1. Ejectment can not be maintained on an equitable title; there must be a legal right to possession. 36 Ark. 456; 98 *Id.* 30.

2. There is no proof of delivery of the deed. 55 Ark. 633; 13 Cyc. 748; 50 N. E. 198; 36 *Id.* 955; 25 *Id.* 844; 29 *Id.* 870; 35 *Id.* 94; 64 *Id.* 275; 47 *Id.* 1046.

3. It is only where the acts or words of the grantor unequivocally evince an intention to deliver that the question becomes one of law. 77 Ark. 89; 100 *Id.* 427; 98 *Id.* 259.

4. There was error in the court's charge. Cases, *supra.*

*D. B. Sain* and *W. P. Feazel,* for appellee.

1. An equitable title with the legal right to possession will support an action of ejectment. 98 Ark. 30; Kirby's Digest, § 2737; 54 Ark. 480; 36 *Id.* 456; Perry on Trusts, § 18; 69 Ark. 564.

2. The real test of delivery of a deed is, did the grantor by act or word intend to divest his title? 74 Ala. 213; 81 Cal. 38; 67 Ga. 707; 106 Mo. 313; 7 Ill. 557; 62 *Id.* 348; 30 Miss. 91; Martindale on Conveyances, 175, and § 205; 77 Ark. 89. The delivery was sufficient to

pass title.   100 Ark. 431; 97 *Id.* 283; 74 *Id.* 104; 82 *Id.* 50; 86 *Id.* 150.

3.   The deed was not a forgery.   52 Ark. 389; 34 *Id.* 503.

SMITH, J., (after stating the facts).   It is contended by appellants that the conveyance by Faulkner to his wife transferred to her only an equitable title to the land in controversy, and that an action of ejectment could not be maintained upon that title.   No exception appears to have been made to this deed in the court below, and no objection was made to its introduction as evidence.   But, if appellees have any title to this land, they have the right to its possession and an equitable title coupled with the legal right to possession is sufficient to maintain an action of ejectment.   Kirby's Digest, § § 2737-2745; *Stricklin* v. *Moore,* 98 Ark. 30; *Alexander* v. *Hardin,* 54 Ark. 480; *Percifull* v. *Platt,* 36 Ark. 456; *Graham* v. *St. Louis, I. M. & S. Ry. Co.,* 69 Ark. 564.

As has been stated, the real question is whether or not the evidence is legally sufficient to support the finding that the deed had in fact been delivered.

It must be confessed that the evidence to establish the delivery of the deed is not altogether satisfying; but we can not say that it is not legally sufficient for that purpose.   In the case of *Russell* v. *May,* 77 Ark. 89, it was said:   "A delivery of a deed is essential to its validity. It can not take effect without delivery, and what is delivery depends upon the intention of the grantor.   Any disposal of a deed, accompanied by acts, words or circumstances, which clearly indicate that the grantor intends that it shall take effect as a conveyance, is a sufficient delivery.   2 Jones on the Law of Real Property and Conveyancing, § § 1217-1224, and cases cited."   No particular form of delivery is required.   The deed may be manually given by the grantor to the grantee, yet, manual delivery is unnecessary.   The real test of delivery is, did the grantor by his acts or words, or both, intend to divest himself of title; if so, the deed is delivered.   *O'Neal* v. *Brown,* 67 Ga. 707; *Tyler* v. *Hall,* 106 Mo. 313.

A number of instructions were given at the request of both parties, and others asked by appellants were refused, which will not be set out in this opinion, as, in a general way, those which were given declared the law as here stated and required the jury to find that the grantor had parted with possesion of the deed for the purpose of divesting himself of his title to the land and of conveying that title to his wife. When this intent is effectuated a delivery of the deed is accomplished.

Appellants also insist that the judgment should be reversed because the proof does not show that Mrs. Faulkner was aware of the execution of the deed, until after the death of her husband, and that therefore there was never any delivery of the deed to her, and no acceptance of it by her. A similar contention was made in the case of *Russell* v. *May, supra,* where a deed had been executed by a husband to his wife and it was there said: "An acceptance of the deed by the grantee is also essential to its validity. If it is beneficial to the grantee, and imposes upon him no burdens, an acceptance may be inferred. If it be executed in pursuance of a previous understanding with the grantee, and is beneficial to him, an acceptance is presumed. In this case the deed was unquestionably beneficial to the grantee. But it is said that she did not know of the existence of the deeds until after the death of her husband, and that this fact disproves the acceptance. This does not necessarily follow. The confidential relation of husband and wife existed between the grantor and grantee, and it would have been natural for him to inform her of his intentions in advance, and for the wife to express her approval; and it by no means follows that she did not accept because she did not know of the existence of the deeds until after the death of the grantor, which was on the fourth day after their execution."

We can not know what passed between Mr. Faulkner and his wife in regard to this deed, as they are both dead; but as this deed was highly beneficial to her, and imposed no burden whatever upon her, and recited the

consideration to be five dollars, cash in hand paid, which, if it had not been paid, was not required to be paid, and as this deed was found under lock and key, and in a receptacle containing her valuable papers, we think the jury was fully warranted in inferring an acceptance of the deed on the part of Mrs. Faulkner.

The proof is undisputed that when the deed was acknowledged it was a valid conveyance of the land in controversy, and if it was delivered it conveyed the title to the land there described, and these subsequent interlineations (the proof does not show by whom made) did not operate to defeat the conveyance.

Other exceptions were saved at the trial, and are urged as grounds for reversal, but we find no prejudicial error and the judgment is affirmed.