CLEVELAND v. BRECKENRIDGE.

Opinion delivered March 28, 1927.

1.  DEEDS—ACCEPTANCE.—Evidence *held* to sustain a finding that there was no acceptance of a deed.

2.  DEEDS—SUFFICIENCY OF DELIVERY.—To constitute a valid delivery of a deed, the grantor, by acts or words, or both, must have manifested an intention to pass the title to the grantee and the latter must have intended to accept the deed.

Appeal from Clay Chancery Court, Western District; *J. M. Futrell,* Chancellor; affirmed.

*J. L. Taylor,* for appellant.

*C. T. Bloodworth,* for appellee.

WOOD, J. This is an action by the appellant against the appellee begun in the circuit court of Clay County, and afterwards, without objection, so far as the record shows, found its way to the chancery court, where it was tried and a decree entered in favor of the appellee, from which is this appeal.

The appellant alleged in substance that she was the owner of the land in controversy, describing same in her complaint; that her mother, Mary Breckenridge, died on April 14, 1924, and, at the time of her death, she was in possession of the land and was the owner thereof, having a fee simple title thereto; that the appellant is the only surviving heir of her mother, and as such is entitled to

the possession of the property and to damages for the unlawful detention thereof by the appellee. She alleged that, before the death of her mother, the house situated on the land had been insured by her against loss by fire, and that the same had been destroyed and the amount of the insurance in the sum of $250 had been collected by the appellee and converted to his own use. Appellant prayed for possession and for damages.

The answer denied all the material allegations of the complaint.

A. H. Breckenridge intervened and alleged that he was the owner of the land under an agreement between J. F. Breckenridge, his father, and Mary Breckenridge, his stepmother, by which they agreed to convey to him the land in consideration that he take care of them and furnish them such cash and other supplies as they might need, which the intervener did in the sum of $2,000. He prayed that the title to the land be vested in him. The appellant answered the intervention, stating that, if such an agreement had been made, it was not in writing, and that no part thereof had been performed; that the same was without consideration and void, and that the appellee, A. H. Breckenridge, was barred by laches from maintaining the action.

The facts are substantially as follows: J. F. Breckenridge was the owner of eighty acres of land in Clay County which had been purchased by him in 1907. He sold off forty acres to one T. R. Cleveland, and A. H. Breckenridge, his son by a former marriage, purchased the land from Cleveland, and appellee, J. F. Breckenridge, and the then Mrs. Breckenridge, the stepmother of A. H. Breckenridge, sold to A. H. Breckenridge 27 acres of the adjoining forty. J. F. Breckenridge desired to sell to his son the entire forty acres, but Mrs. Breckenridge, the stepmother, objected. She desired that they retain the remaining thirteen acres for a home. A scrivener was called in to make the deeds. One deed was made out to A. H. Breckenridge to twenty-seven acres, and another deed was executed by Breckenridge to his wife for the

remaining thirteen acres of the forty. The deeds were executed and acknowledged by J. H. Breckenridge and his wife to A. H. Breckenridge, and by J. H. Breckenridge to his wife. The scrivener testified that he wrote the deeds, took the acknowledgments, and laid the deeds on the table. He testified that Mr. and Mrs. Breckenridge were living on the land at the time. Mrs. Breckenridge turned over a span of young mules on the purchase price of the land in controversy. They lived there on the place until Mrs. Breckenridge died. The title was in the name of J. F. Breckenridge. The deeds were witnessed by one Barnes.

The appellant testified that she was the daughter of Mrs. J. F. Breckenridge by a former husband, Lovell. She was the only child, and she married a man by the name of Cleveland. She stated that the thirteen acres of land in controversy belonged to her mother. Her mother died on the land. Appellant knew about the deed her stepfather, Breckenridge, made to her mother. Her mother showed her the deed, which she kept in a trunk. Her mother told the appellant that Mr. Breckenridge had given her the deed to sign over the rest of the land to Albert Breckenridge. Witness' mother had been living on the land since 1903. The last conversation witness had with her mother was in March, 1924. At that time she told the appellant she had lost the deed. She died April 14, 1924. Witness stated that her mother's trunk was then at witness' house; that her mother also told her that she had turned a span of young mules in on the purchase price. Her mother had $191 in money and she said that Breckenridge spent it. Witness' mother had been in possession of the land claiming it since witness' stepfather made the deed to her.

Ten witnesses testified on behalf of the appellant, and their testimony tended to prove that Mrs. Breckenridge claimed the land since 1907 after J. H. Breckenridge made the deed to her. One witness stated that Mrs. Breckenridge showed her the deed in 1908. At least three of the witnesses stated that she had shown them the

deed, and practically all of them stated that she claimed to own the land and would not sell the same; that she wished to keep the land for her daughter, the appellant. Several of the witnesses stated that J. F. Breckenridge spoke of the land as belonging to Mrs. Breckenridge, and that he could not get her to dispose of it. The testimony of some of the witnesses was also to the effect that they never heard of Albert Breckenridge claiming the land. One of the witnesses stated that, in 1920, Mrs. Breckenridge rented the land to witness' brother, and that Mrs. Breckenridge was in possession in 1921; that old man Frank Breckenridge had sold all of his property and left, and that Mrs. Breckenridge thought he was gone for good.

The testimony of the appellee was to the effect that, on the occasion when J. F. Breckenridge and wife sold the twenty-seven acres to A. H. Breckenridge, J. F. Breckenridge made out a deed also to his wife, but she did not accept it, and afterwards burned the same by throwing it in the stove. The deed was in witness' trunk. Witness and his wife lived on the place all the time, but his son, Albert, took care of them and paid all the taxes. Albert also collected the rents on the whole place and had the management of it. Mrs. Breckenridge told A. H. Breckenridge, witness' son, that he could have the land if he would take care of them, and she stated that is the reason why she would destroy the deed. She wanted to make A. H. Breckenridge a deed, and they did make a deed to the 27 acres, and he also made out a deed to Mrs. Breckenridge. She never did accept it, and burned the same two or three years afterwards. She was unwilling to make Albert H. Breckenridge a deed to the thirteen acres because she was afraid he might die, and she wanted a place to live. Witness and his wife had been living on the place all along.

The greater number of witnesses testified on behalf of the appellee to the effect that A. H. Breckenridge had control and management of the land in controversy, and rented it out and collected the rents. Some of them

stated that he claimed to own the land, and the rents were paid to him.   One witness testified that he was present when the scrivener wrote the deeds in 1907 and witnessed the deeds with Frank Barnes as the other witness.   After the deeds were written and signed, the scrivener laid them on the table and left.   Mrs. Breckenridge said several times that there was not any use in making the deeds to her.   J. F. Breckenridge threw the deed to the 13 acres in his trunk.

Another witness testified that he saw the deed and talked to Mrs. Breckenridge about having it recorded, and went out to get it and put it on record for her, but she declined.   This was in 1908 or 1909.   She didn't want to take it, and said as long as she lived it wasn't necessary, and at her death it was to go to Calla. Several of the witnesses testified to hearing Mr. and Mrs. Breckenridge state that they had agreed to sell the land to Albert Breckenridge, since he had been furnishing them with money, paying their bills and taking care of them.

From the evidence adduced the trial court found that there was no delivery and acceptance of the deed to Mrs. J. F. Breckenridge, and that no title ever passed to her. Without pursuing the subject further, we are convinced that the finding of the trial court, to say the least, was not against the preponderance of the evidence.   Whether or not there has been a delivery of a deed depends upon the intention of the parties as manifested by their acts and words.   The grantor, by his acts or words, or both, must have manifested an intention to pass the title to the grantee and the grantee must have intended to accept such deed in order to constitute a valid delivery and conveyance of title. *Cribbs* v. *Walker,* 74 Ark. 104, 85 S. W. 244; *Russell* v. *May,* 77 Ark. 89, 90 S. W. 617; *Ames* v. *Ames,* 80 Ark. 8, 96 S. W. 144, 117 A. S. R. 68; *LaCott* v. *Quertermous,* 84 Ark. 610, 107 S. W. 167; *Maxwell* v. *Maxwell,* 98 Ark. 466, 136 S. W. 172; *Battle* v. *Anders,* 100 Ark. 427, 140 S. W. 593; *Faulkner* v. *Frazel,* 113 Ark. 289,

168 S. W. 568; *Wood* v. *Wood*, 116 Ark. 142, 172 S. W. 860; 8 R. C. L., Deeds, par. 47.

It occurs to us that a preponderance of the testimony sustains the finding of the trial court. The decree is therefore correct, and it is affirmed.