McCRARY v. WILKINS.

Opinion delivered March 2, 1925.

1.  TRIAL—TRANSFER OF CAUSE—WAIVER OF OBJECTION.—Objection to the removal to equity of an action requiring an accounting between partners, when it was properly triable at law, was waived where the removal was by consent.

2.  PARTNERSHIP—EVIDENCE.—Evidence held to sustain a finding that a partnership in the hauling business existed between plaintiff and defendant.

3.  JOINT ADVENTURE—ACCOUNTING.—Where a Ford car was acquired, either as a result of a joint enterprise or as part of partnership assets, it was proper to direct an accounting to determine the interest of the parties in the car.

Appeal from St. Francis Chancery Court; *A. L. Hutchins*, Chancellor; affirmed.

*S. S. Hargraves* and *John M. Prewett*, for appellant.

The demurrer should have been sustained.  The court erred in transferring the cause to the chancery court.  108 Ark. 252.  An action at law cannot be brought by one partner against another for money alleged to be due him on account of partnership transactions until after a settlement.  140 S. W. 1193; 142 N. Y. 1. The only action that could be sustained before settlement is a suit for an accounting. 72 Ark. 469; 23 Ark. 333; 12 Am. Dec. 649.  The agreement of counsel to transfer the cause to the chancery court did not give that court jurisdiction of

subject-matter. 48 Ark. 151; 88 Ark. 1; 129 Am. St. Rep. 73; 85 Ark. 213; 203 Ill. 92; 67 N. E. 497; 124 Ill. 516; 16 N. E. 909. An agreement by two persons to buy an article together does not amount to an agreement to form a partnership.  79 Ark. 499; 130 N. Y. 54; 145 App. Div. 280; 132 N. W. 477; 54 Ark. 384; 138 Ark. 287; 42 Ark. 390; 60 Am. St. Rep. 344; 30 Cyc. 370; 93 Ark. 526; Parsons on Partnership, § 58.

*Mann & Mann,* for appellee.

The chancery court had jurisdiction. 74 Ark. 104.

WOOD, J.  This action was instituted by Wilkins against McCrary and the St. Francis Motor Company in the circuit court of St. Francis County, Arkansas, to recover the sum of $240.  Wilkins alleged that he and McCrary were joint owners of a Ford touring car of the value of $480; that McCrary, without right and over his objection, sold the car to the St. Francis Motor Company, and thereby converted the car to his own use, to his damage in the sum of $240, for which he prayed judgment.  McCrary and the motor company answered denying the allegations of the complaint.  The cause was, by agreement of parties, transferred to the chancery court.

Wilkins, in his deposition, was asked to explain the exact arrangement between him and McCrary in regard to the purchase of a wagon, and said: "Well, to start at the first of it, Mr. McCrary and I were talking over this seed business, and he told me that he had the contract for the hauling from the Planters' Gin to the oil mill, and made the proposition to me that if I was to go one-half on a wagon and expenses that we would go in one-half each in the seed hauling, that he had a team that he would furnish, and I was to look after the hauling and the team while it was down there.  This was agreeable to Mr. McCrary and myself."  McCrary was asked to state the business relationship between himself and Wilkins in 1922, and testified as follows:  "The fall of 1922 I offered Mr. Wilkins a proposition that, if he would

help me buy a wagon and get a place to keep a team here in town, and look after this team, that, after the expense of the wagon and the expense of the hauling come out, why I would split the profit 50-50 on the seed hauling from the Planters' Gin.''

Witness T. R. Shawver testified that, on or about September 6, 1922, he heard a conversation between Wilkins and McCrary in regard to the purchase of a wagon from Stevens Hardware Company. McCrary had bargained for a wagon from Pettus & Buford. Wilkins had bargained for a wagon from Stevens Hardware Company. The wagon was to be charged to the two men jointly. The first reason for purchasing the wagon from the Stevens Hardware Company was that the purchasers thought they were getting a better value than from the other dealer. The second reason for making the purchase from the Stevens Hardware Company was that a Ford car was being given away in a drawing contest, and they could get tickets on this purchase of the wagon, provided they paid the account in thirty days from date.

Witness Fenner Laughinhouse, a member of the firm of the Stevens Hardware Company, testified concerning the purchase of the wagon above mentioned as follows: Witness negotiated with McCrary and Wilkins for the sale and purchase of the wagon. Witness' firm delivered the wagon to a negro sent after it by McCrary. Before this, McCrary had agreed with witness as to the price of the wagon. The wagon was to be charged to McCrary, to keep from opening an account with McCrary and Wilkins. McCrary already had an account with witness' firm. McCrary paid for the wagon by check. He paid his account, and the wagon was included in the account. About that time there was an advertising scheme on hand by the merchants in Forrest City by which they gave to cash purchasers tickets in a drawing that was to take place some time in October, at the Imperial Theatre, and the merchants in the city took

advantage of it and gave to cash purchasers coupons or
tickets which entitled them to a chance in the drawing.
The Stevens Hardware Company took part in that adver-
tising scheme. When the wagon was purchased and
paid for by McCrary, the Stevens Hardware Company
delivered to him coupons or tickets for the drawing.
They delivered to McCrary about 187 tickets. Witness
did not give him in one lot 180 tickets to cover the wagon
purchase and seven to cover his account separately.
They were all attached. Witness was asked what con-
nection Wilkins had with the sale of this wagon, and
answered, "Only he came in to ask about it, figured on
it, and told me they were figuring on it together." Wit-
ness thought it was two different wagons at first—didn't
know it was to be used by both of them. Wilkins came
up and had a conversation with witness, and looked at it,
and witness didn't mention that he was figuring on sell-
ing another. Wilkins told witness that it was the same
wagon. Witness thought he was selling two wagons
instead of one. He stated that both Wilkins and
McCrary had individual accounts with the hardware
company. After the controversy arose between Wilkins
and McCrary as to whether the purchase of the wagon
entitled Wilkins to an interest in the Ford car drawn by
McCrary with one of the tickets issued by the hardware
company, McCrary wrote Wilkins a letter in which he
stated: "Inclosed you will find a slip with the expense
and the returns of the wagon. There is still a balance
of $20.40 on the wagon, and the expense not paid by
the proceeds of the wagon. If this is not satisfactory
enough to show that you have no interest in the drawing,
you will have to prove otherwise, for I can't see it in
any other way." Accompanying this letter was a state-
ment showing that the proceeds from the wagon amounted
to $150 and the expense in the purchase of the wagon
and in connection with the use thereof was $170, there
being a difference between the proceeds and the expense
of purchase and operation of $20.40.

The above are the salient features of the testimony upon which the court found that there was a partnership between McCrary and Wilkins for the hauling of cottonseed during the season of 1922, and, over the objection of McCrary, directed an accounting between the parties, and, upon these statements in evidence, found that there had been received from the partnership business $423.55; that there had been invested in property out of the partnership funds the sum of $127.50, and that the expense incurred in addition to this amounted to $272.85, leaving a balance in money in McCrary's hands of $23.20, in addition to the proceeds of the car and the items of personal property purchased with partnership funds. The court entered a decree in favor of Wilkins against McCrary and the motor car company for the sum of $243, a half value of the Ford car, and in favor of Wilkins against McCrary for a half of the balance of the money in the hands of McCrary, and also directed that the articles of personal property be sold and the proceeds divided equally between the parties. From that decree McCrary prosecutes this appeal.

1. Under the pleadings in the case, the action was properly begun at law, and, if the appellants had objected, it would have been error, without an amendment in the pleadings, to have transferred the cause to the chancery court. But the appellants and the appellee by express agreement asked that the cause be transferred to the chancery court. Although the issue raised by the pleadings was one involving only the title to the Ford car and the damages resultant from the alleged conversion of appellee's interest by the appellants, nevertheless, to determine that issue under the proof of the contract between the parties, it was necessary to have an accounting. It turns out, from the developments made by the testimony, that there was no complication in the matter of accounting, and that the cause could have been determined in the law court. Still, the subject-matter of an accounting was one over which the chancery court had jurisdiction, and when the parties asked the chancery

court to assume jurisdiction of the subject-matter and it did so, they must be held to have waived any objection to the determination of the cause by that court. As was said by this court in *Cribbs* v. *Walker*, 74 Ark. 104, at page 122, "this is not a case where there is such a lack of jurisdiction of either the parties or subject-matter as the parties cannot waive." See other cases cited in the opinion.

2. The testimony was ample to justify the court in finding that a partnership existed between the appellant and the appellee in the business of hauling during the fall of 1922 from the Planters' Gin to the oil mill.

In *Mehaffy* v. *Wilson*, 138 Ark. 287, this court said: "Mere participation in the profits and losses of a business alone would not make a participant a partner. Whether in fact a partnership exists depends upon the intention of the parties to be discovered from the contract into which they entered, construed in the light of all the facts and circumstances that obtained. Whether a given agreement amounts to a partnership between the partners themselves is always a question of intention."

But, whether the relation of partnership existed between the appellant and appellee or not, it is clear that the purchase of the wagon from the Stevens Hardware Company and the drawing of the Ford car in controversy grew out of their joint enterprise. An accounting between them was essential to determine whether the appellee had any interest in the car which he alleged the appellant had converted to his own use. The court therefore did not err in directing an accounting between the appellant and the appellee of their joint enterprise, and, having assumed jurisdiction for the purpose of ascertaining whether or not the appellee had an interest in the car which the appellant had converted to his own use, it was not error for the court to determine the status of the accounts of the joint enterprise and to render its decree adjusting the accounts and concluding the rights of the parties.

The decree of the court is in all things correct, and it is therefore affirmed.