UNITED BUILDING & LOAN ASS'N v. GARRETT et al. (TEXAS–ARKANSAS FUND, Inc., et al., Intervenors).

No. 529.

District Court, W. D. Arkansas, Fort Smith Division.

Feb. 12, 1946.

Pryor, Pryor & Dodds, of Fort Smith, Ark., for plaintiff.

Abernathy & Abernathy, of Shawnee, Okl., for defendants Troy Garrett, et al.

Fred Quillin, of Mena, Ark., for defendant Buena V. Garrett, and individual intervenors.

U. A. Gentry, of Little Rock, Ark., for intervenor Texas-Arkansas Fund, Inc.

JOHN E. MILLER, District Judge.

Specific findings of fact and conclusions of law, separately stated, have been made and filed as required by Rule 52(a), Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c, and reference to such facts will be made in this discussion only as is necessary to a clear understanding of the material issues.

The plaintiff, United Building & Loan Association, filed its bill of interpleader, invoking the jurisdiction of the court under 28 U.S.C.A. § 41, subdivision 26, on the ground that it held as stakeholder certain funds of a value in excess of $500 which were subject to identical adverse claims by numerous parties residing in Arkansas, Texas, Oklahoma, Kansas and Missouri. The bill named as defendants Troy Garrett, successor trustee under a certain Declaration of Trust executed by Presley G. Garrett, the beneficiaries under the said Declaration of Trust, Buena V. Garrett, individually and as administratrix and surviving widow of Presley G. Garrett, deceased. Plaintiff alleged its willingness to pay the fund into the registry of the court, and asked to be discharged of further responsibility.

Subsequently, the intervenor, Texas-Arkansas Fund, Inc., filed its intervention in which it adopted the allegations as to the residence of the parties defendant and the respective claims of the defendants to the proceeds of two certificates of beneficial interest issued by its predecessor, The Arkansas Fund, Inc., to Presley G. Garrett.

462

Answers were filed by Troy Garrett, as successor trustee, acting on behalf of the beneficiaries of the Declarations of Trust, and by Buena V. Garrett, both as administratrix and also in her individual right, setting out their respective claims to the certificates or their proceeds.

An intervention was filed by Louise Hounsel Howe and J. N. Hounsel, in which the individual intervenors alleged that they are the daughter and son, respectively, of Cora Garrett Hounsel, a daughter of Presley G. Garrett, deceased, and who predeceased the said Presley G. Garrett. They further alleged that they are heirs of the said Presley G. Garrett, and as such are entitled in law to their distributive share of their deceased mother's interest in the estate of Presley G. Garrett.

By agreement of all parties the court entered an order directing that the plaintiff liquidate the certificate issued by it, and that the intervenor, Texas-Arkansas Fund, Inc., liquidate the certificates of beneficial interest issued by it, and pay the funds into the registry of the court to abide the final judgment of the court. At the same time, the court directed that the costs incurred by the plaintiff and the said intervenor, including an attorney's fee in favor of the plaintiff and of the intervenor each in the sum of $250, be paid by the clerk of the court out of the said funds.

On February 23, 1940, plaintiff issued to Presley G. Garrett its Certificate No. 104 for 45 shares of par value of $100 each, and thereafter on April 11, 1941, Presley G. Garrett executed an instrument entitled "Declaration of Trust", which was duly acknowledged and subsequently filed with the plaintiff. On the back of said certificate was typed the following endorsement: "This Certificate is subject to a Declaration of Trust in favor of William Garrett, et al., made by Presley G. Garrett on the 11th day of April, 1941, a copy of which is attached hereto. United Building And Loan Association, By F. N. Dyke, President. Attest: Nathaniel Dyke, Jr., Sec'y."

The Declaration of Trust was attached to the said certificate and reads as follows:

"That I, Presley G. Garrett * * * hold one United Building and Loan Association Full-Paid Share Certificate, No. 104, dated February 23, 1940, for 45 shares of the par value of $100.00 each, * * * in my name, as Trustee, for the use and benefit of: (naming nine beneficiaries). Hereby expressly reserving as long as said Certificate stands in my name as Trustee the right and power to sell, assign, transfer, set over and deliver said Certificate, or any part thereof, and to collect and use the dividends and proceeds therefrom for the use and benefit of myself. The exercise of the right and power hereinabove reserved to me shall be conclusive on the beneficiaries herein named.

"This trust shall terminate one year after my death, and the trust estate shall thereupon pass and be transferred to said Beneficiaries according as their interest may appear. (Then are inserted provisions for succession of interest of beneficiaries who predecease the termination of the trust, provisions for the appointment of successor trustees, and a statement of their duties.)

"The right to revoke this trust, either in whole or in part, at any time before said trust is otherwise terminated under the foregoing provisions hereof, is hereby expressly reserved to me. Such revocation shall be made in writing signed by me, and an original and copy thereof delivered to United Building & Loan Association."

On February 8, 1940, the intervenor, through its predecessor, The Arkansas Fund, Inc., executed and delivered to Presley G. Garrett its beneficial certificate No. 836, which had a value of $4,800, and on the same date Garrett executed and delivered to the Arkansas Fund, Inc., an instrument designated "Declaration of Trust". On the face of the certificate was stamped and written the following endorsement: "This certificate is subject to a declaration of trust executed by the within named Presley G. Garrett dated February 8, 1940, a copy of which has been filed with the undersigned and any transferee shall be bound by the provisions thereof."

The Declaration of Trust was dated February 8, 1940, was signed and acknowledged by Presley G. Garrett, and endorsed by the issuer, certifying that the original of the declaration was filed with the Arkansas Fund, Inc., on February 12, 1940. This instrument provided as follows: "That I, Presley G. Garrett * * * do hereby declare that I have subscribed for a $4800.-00 Arkansas Fund Certificate * * *; that I hold Certificate No. 836 in my name, as Trustee, for the use and benefit of: (naming the same beneficiaries as before)"

The next paragraph reserving to the settlor-trustee the power to sell, assign, etc. is identical with the earlier Declaration set out above. The termination of this trust, however, is fixed as follows: "This Trust shall terminate upon maturity of said Arkansas Fund Certificate No. 836, and the Trust estate shall thereupon pass and be transferred to said beneficiaries. * * * Should all of said beneficiaries die prior to the termination of said Trust, then said Trust estate shall vest in me and be distributed, unless otherwise disposed of, as a part of my estate."

The remaining provisions of this Declaration are substantially the same as the earlier one set out above, including the reservation of a power to revoke the trust by written notice to the Arkansas Fund, Inc. On the back of the certificate, however, there is an endorsement in blank of the Form of Assignment.

On March 29, 1941, the Arkansas Fund, Inc., issued its beneficial certificate No. 1012 of the then value of $1,200 to Presley G. Garrett who executed and delivered a "Declaration of Trust" relative to the said certificate, containing the same provisions as the Declaration executed in connection with certificate No. 836, and certificate No. 1012 was endorsed on the face in the same manner as No. 836. The Form of Assignment on the back of No. 1012 was unexecuted.

Presley G. Garrett died intestate June 11, 1944, a resident of Polk County, Ark. Defendant Buena V. Garrett, the widow of deceased, was duly appointed administratrix of the estate by the Probate Court of said County on June 13, 1944, and is now the duly qualified and acting administratrix of said estate. Presley G. Garrett left surviving him his widow, a second wife, the individual intervenors, Louise Hounsel Howe and J. N. Hounsel, as only surviving heirs of Cora Garrett Hounsel, a deceased daughter, and the defendants, Troy Garrett, et als., sons and daughters of deceased by his first marriage. Troy Garrett is successor trustee under each of the "Declarations of Trust."

In her answer and cross-complaint, the widow and administratrix denies that the purported trust agreements are sufficient at law to constitute valid trusts; that if the purported agreements have any standing at law, they constitute wills which as to her and to heirs of the deceased, not named therein, are void.

The individual intervenors by answer and cross-complaint make substantially the same allegations as the administratrix, claiming their interest as pretermitted heirs of the deceased, electing to renounce the documents they allege are wills, and electing to take their interest in the estate according to the law of Arkansas.

The defendants, beneficiaries under the Declarations, answer and file cross-complaint averring the validity of the instruments as declarations of trust.

■■■ The court has jurisdiction of the parties and subject matter under 28 U.S. C.A. § 41, subd. 26. In determining the legal interests and rights created by the "Declarations of Trust," the law of Arkansas controls. Bingen et ux. v. First Trust Co. of St. Paul et al., 8 Cir., 103 F. 2d 260, 264; United States v. Pierce, 8 Cir., 137 F.2d 428, 431, 148 A.L.R. 1228. The settlor-trustee was a resident of Arkansas; the alleged trust estate was created and held in Arkansas; and the beneficial certificates provide that the rights of all parties shall be determined by the laws of Arkansas.

In the instruments executed by Presley G. Garrett, all formal requirements for creating a valid trust are clearly met. The settlor declared that he held certain certificates in his name as trustee, and made provisions for successor trustees in the event of his incapacity or death. Three beneficial certificates, to which were attached the respective declarations of trust, constituted the res. The beneficiaries of the trust are named individually, with directions for reallocation of interests in case any or all beneficiaries predeceased the settlor. Provision for the children of his first marriage is the obvious purpose of the settlor's act.

■■■ That it is permissible for the settlor to act as trustee is beyond question, and a trust will be created without transfer of legal title to the property. Griffith v. Maxfield, 66 Ark. 513, 521, 51 S.W. 832; Restatement of the Law, Trusts, § 17(a).

The critical issue in this case is whether the declarations in question created any present interest in the beneficiaries. Stated more fully, did the settlor by his reservation of the power to revoke and the power to sell, assign, transfer, set over and deliver the certificates, and to collect and use the dividends and proceeds therefrom for his own use, retain such dominion and con-

trol over the res as to negate an intention to create a present trust?

It is well established that the settlor may reserve to himself a beneficial interest in the proceeds from the property for his life and the power to revoke the trust in whole or in part at any time. Gall v. Union National Bank of Little Rock, 203 Ark. 1000, 159 S.W.2d 757; Cribbs v. Walker, 74 Ark. 104, 85 S.W. 244; Stone v. Hackett, 12 Gray, Mass., 227 (cited with approval in Cribbs v. Walker, supra); Dickerson's Appeal, 115 Pa. 198, 8 A. 64, 2 Am.St.Rep. 547; Restatement of the Law, Trusts, § 26, p. 84; 4 Bogert, Trusts and Trustees, § 994, pp. 2900, 2901.

Did the additional reservation of the power to sell, assign, transfer, set over and deliver the property, and to collect and use the dividends and proceeds therefrom for his own use and benefit, evidence such dominion and control of the settlor over the res as to negate an intention to create a present trust?

There is no difference in substance in reserving the power to revoke, and in retaining the power to sell the res and use the proceeds. The effect in either case on the interest of the beneficiaries is identical. The distinction, if any, lies only in procedure. In 1 Bogert, Trusts and Trustees, § 104, p. 339, the author says: "Probably the most extreme cases are those where the grantor reserves to himself the right to take from the *principal* of the trust any portion or all of it, without revoking the trust. As an incident of the trust, the settlor and life cestui has a right to such part of the capital of the trust during his life as he may elect to take. Some courts have thought that this right and power was so broad as to be equivalent to absolute ownership and that hence the gift of the equitable interest in remainder to the other cestuis was testamentary in nature. Other courts seem to have regarded such a reserved right as equivalent to a power of revocation of the trust and therefore under well established doctrines not sufficient to render the disposition testamentary." (Citing cases decided by the appellate courts of Connecticut, Kansas, Massachusetts, Michigan, New York, Oregon, and West Virginia.)

Scott on Trusts, § 57.2, contains a similar statement. In discussing Warsco v. Oshkosh Savings & Trust Co., 183 Wis. 156, 196 N.W. 829, which held invalid an attempted declaration of trust, the author comments: "It was admitted that the mere reservation of power to revoke the trust would not make it testamentary; but the court said that the power of the settlor to demand repayment was different from a power to revoke the trust, since in making such repayment the trustee would be carrying out the trust. *This distinction would seem to be rather finespun.*" (Emphasis added.) The decision in this case was subsequently avoided by legislation.

The New York Court of Appeals in Van Cott v. Prentice, 104 N.Y. 45, 10 N.E. 257, 260, bluntly exposes the proposition that there is any real distinction between the power to revoke and the power to control the trustee in the handling of the res. There the settlor reserved the power to revoke, and in addition it was provided in the instrument that the beneficiaries should have no legal or equitable right to the principal or income, but should receive the same as proceeding solely from the bounty of the settlor and subject to his power to revoke, and that the trustee should hold subject to the grantor's control and direction. With respect to these provisions the court said:

"The latter provision is plainly but an amplification of the idea involved in the power of revocation * * *. Since he intended to create an effective trust, and declared that he had done so, and delivered the possession and passed the title to the fund to the selected trustee, we are bound to understand his denial of an equitable right to the beneficiaries as meaning only to emphasize his own control flowing from the voluntary character of his act and his reserved power of revocation. * * * *That language only repeats, in another form, the effect of the reserved power of revocation.* The existence of that inevitably leaves in the settlor an absolute control, since at any moment he may end the trust and resume possession of the fund as his own. * * * Its continued existence was to be absolutely subject to the direction and control of Prentice (settlor),—a result always inevitable where a power of revocation is reserved." (Emphasis added.)

Since it is clearly permissible for the settlor to act as trustee, in the very nature of the situation the settlor-trustee must retain a greater degree of control than may be thought desirable when there is a sepa-

rate trustee. Restatement of the Law, Trusts, § 57, Comment (b), p. 176.

█ The weight of authority, both in numbers and influence, support the right of the settlor to reserve the power to consume the principal of the trust res. Such is the law in Arkansas as announced in Cribbs v. Walker, supra. Cullen G. Cribbs executed a deed to his wife, Katie, in which he conveyed certain real estate in trust for his own use for life, and provided that it should "be conveyed, leased or mortgaged to any person or persons or corporation as the party of the first part may at any time direct said trustee to do." After holding the instrument a deed rather than a testament, the court said:

"The only marked differences between the instrument under consideration and the Nicks deed, so far as it may distinguish it as a deed from a will, are the clauses reserving to the grantor the right to direct the disposal of the property and the right of revocation in the event of the predecease of the trustee. Do these necessarily stamp the instrument as a will?"

After discussing with approval a number of leading cases sustaining the validity of instruments similar to the one in question, the court concludes: "In our opinion, the form and language of the instrument clearly indicate the intention of the grantor to convey the legal title in præsenti. It contains apt words of conveyance usually employed in a deed of conveyance; and the reservation to the grantor of the use during his life and the right to direct a conveyance to be made by the trustee to other parties, and to recall or revoke the trust, all, instead of showing an intention to make the instrument a testamentary paper to take effect only at his death, imply an immediate passage of the title. If Cribbs intended the paper to be a will, and retained it in his possession as such, why the necessity of incorporating those reservations in the instrument? If it was not to take effect until his death, the reservation of the life estate and right to direct a sale and to revoke the trust was useless, as under a will he possessed those rights and powers, and more, without such express reservation."

In Kelly v. Parker, 181 Ill. 49, 54 N.E. 615, 616, a case discussed and relied on by the Arkansas Supreme Court in the Cribbs decision, the settlor reserved to himself "full power and authority, during his natural life, to let, demise, mortgage, sell, and convey said real estate, or any part or portion thereof, upon such rents, considerations, terms, trusts, conditions, and estates, in fee, or any less estate, or for years, and to such effect as he shall desire, * * *", and in addition reserved the power to revoke in writing. The transaction was sustained by the court as a valid trust. To the same effect are Jones v. Old Colony Trust Co., 251 Mass. 309, 146 N.E. 716; Rosenburg v. Rosenburg, 40 Hun, N.Y., 91; Keck v. McKinstry, 206 Iowa 1121, 221 N. W. 851; Sims v. Brown, 252 Mo. 58, 158 S. W. 624; Oakland Scavenger Co. v. Gandi, 51 Cal.App.2d 69, 124 P.2d 143.

█ With respect to Certificate No. 104, issued by the United Building & Loan Association, the declaration fixes the termination of the trust at one year after the death of the settlor. That this provision does not make the instrument testamentary in character or evidence an intention of the settlor to effect a testamentary disposition of his property, is clearly established in Arkansas and a majority of other jurisdictions. If by the terms of the instrument, an interest passes to the beneficiaries during the life of the settlor, even though possession or enjoyment thereof is postponed until the death of the settlor, the trust is not testamentary. Owen v. Owen, 185 Ark. 1069, 51 S.W.2d 524; Pelt v. Dockery, 176 Ark. 418, 3 S.W.2d 62; Sutton v. Sutton, 141 Ark. 93, 216 S.W. 1052.

█ The policy of the law favors the vesting of interests, and where possible, will construe a provision as a condition subsequent in preference to a condition precedent. The undeviating trend in cases dealing with the validity of trust declarations is to treat reservations such as those involved in this case as conditions subsequent which may operate to defeat the interest of the beneficiaries, but which, unexercised, do not prevent the vesting of equitable title. See Cramer v. Hartford-Connecticut Trust Co., 110 Conn. 22, 147 A. 139, 73 A.L.R. 209 and Cleveland Trust Co. v. White, 134 Ohio St. 1, 15 N.E.2d 627, 118 A.L.R. 481.

█ In determining whether the reserved powers are so great as to negate an intent to create any present interest, one of the factors to be considered is the formality of the transaction. Restatement of the Law, Trusts, § 57, Comment (g), p. 179. Here the settlor executed and acknowledged each declaration, and their receipt and filing was acknowledged by of-

ficers of the corporations which issued the certificates. On each certificate was endorsed a notice, signed and ·attested by officers of the corporations, that the certificates were subject to a declaration of trust. Little more that the settlor could have done in the nature of formalities can be conceived or required. Bingen v. First Trust Co. of St. Paul, supra.

The settlor, by the declarations in question, intended and effected the. transfer of a present beneficial interest to the named beneficiaries, retaining in himself the legal title in trust and an equitable interest for life in the proceeds of the funds. The powers reserved by the settlor were in the nature of conditions subsequent, which, if exercised by positive action on his part, would have divested the interest of the beneficiaries and denied them the possession and enjoyment of the res. Since the settlor never chose to exercise the powers reserved by him, the interest of the beneficiaries was present and subsisting at his death, and they are now entitled to have the trust administered according to its terms.

The extent to which appellate courts of high authority, including the Supreme Court óf Arkansas, have gone in approving powers reserved by owners of property who purport to create trusts, may well be questioned as a matter of policy. It is difficult to reconcile the decisions with the fundamental requirements that the` beneficiary must have an enforcible equitable title and that the settlor must surrender dominion of the property, but it is not the right of a trial court to override precedents established by superior courts. It can only apply the law as it finds it.

Buena V. Garrett, as administratrix, asserts that by proceedings in the Probate Court of Polk County, Ark., she, as personal representative of the deceased settlor, exercised his power to revoke the trusts, and that as his widow, elects to take her interest under the laws of the State of Arkansas. The declarations of trust name Troy Garrett as successor trustee in the event of the death or incapacity of the settlor-trustee to act. On the death of the latter, all right, title and interest, subject to the terms of the declarations, passed to Troy Garrett. Buena V. Garrett at no time nor in any capacity was in a position to ex-

ercise the power of revocation reserved to the settlor. 54 Am.Jur., Trusts, § 72. Since the trust is a valid inter vivos transaction, there is nothing to which her right of dower can attach, hence her attempted election to take a dower interest in the proceeds of the certificates is a nullity.

There is no contention in this case that there was any attempt to defraud the widow of her dower rights. The declarations were executed several years prior to the death of the settlor, and it is not suggested that there was any reason for him at the time to suppose that his death was imminent. Under the statutes. of Arkansas, the wife has no inchoate right of dower in the personalty of her husband, and he can dispose of it during his lifetime free from dower. McClure et al. v. Owens, 32 Ark. 443; In re McKenzie, 8 Cir., 142 F. 383.

In their cross-complaint, the defendants, beneficiaries, pray the court to assess the costs of this action, including the attorneys' fees allowed by the court to counsel for the plaintiff and the corporate intervenor, against the other defendants.

The assessment of costs under Rule 54(d), Rules of Civil Procedure, 28 U.S.C.A. following Section 723c, is left to the sound discretion of the court. Ordinarily costs will be assessed against the defeated parties, but the court may direct otherwise.

In this case the declarations of trust challenged by the administratrix were open to considerable doubt as to their validity. So close was the question that the wisdom of the administratrix might well have been questioned had she failed to contest their validity. It was her legal duty to marshal the assets of the estate entrusted to her care by a competent court. Under these circumstances the court believes it will be more equitable to assess the costs of the action, including the attorneys' fees already paid on order of the court, against the trust fund now held in the registry of the court. The defendants', beneficiaries', prayer for judgment of costs against the other defendants is therefore denied.

Judgment will be entered directing the payment of the funds in the registry of the court, less costs, to Troy Garrett, successor trustee.