Joshua SUTTER *v.* Mary Lou SUTTER

00-552                                                                          43 S.W.3d 736

Supreme Court of Arkansas
Opinion delivered May 17, 2001

*James F. Lane, P.A.*, for appellant.

*Boyett & Morgan, P.A.*, by: *Comer Boyett, Jr.*, for appellees.

*Hartsfield, Almand & Grisham, LLP*, by: *William G. Almand*, for appellee Clayla Hicks.

TOM GLAZE, Justice. This case was previously before us concerning procedural issues. *See Sutter v. Payne*, 337 Ark. 330, 989 S.W.2d 887 (1999). In that appeal, the chancellor had stricken Joshua Sutter's untimely answer to a petition for declaratory judgment, which was filed against Joshua and other co-defendants, seeking to determine the validity of an *inter vivos* trust established by the defendants' grandfather, Luther S. Sutter. Joshua challenged that ruling on appeal, asserting the chancellor had erred because Joshua was entitled under the common-defense doctrine to benefit from the timely answer filed by his co-defendant, Luther O'Neal Sutter II. We held the chancellor erred, and we remanded the case for further proceedings. On June 28, 1999, the chancellor heard the case on its merits and held (1) the court had jurisdiction of the persons and subject matter, and (2) Luther's *inter vivos* trust was valid. Joshua disagrees with the chancellor's decisions and brings this second appeal. Before addressing Joshua's points for reversal, we first set out the relevant facts necessary for a full understanding of his arguments.

Luther had three children — Mary Lou Sutter Payne, Cora Sue Sutter West, and Luther O'Neal Sutter, Sr. On June 1, 1994, Luther, as settlor, executed a declaration of trust wherein he named himself trustee to hold the trust estate for his own benefit. He specifically reserved the right during his life to amend or revoke his declaration-of-trust agreement without the consent of any beneficiary. Luther further provided that, upon his death, his son, Luther O'Neal, Sr. should be successor trustee and, as successor trustee, Luther O'Neal, Sr. was directed forthwith to transfer the trust estate to Luther's three children, Mary Lou, Cora Sue, Luther O'Neal, Sr., and a grandson, William Howard Payne. After Luther O'Neal met an untimely death in November 1995, Luther named Mary

Lou to serve as the successor trustee. At the same time, Luther also added his granddaughter, Clayla Hicks, as a beneficiary, but specifically provided Luther O'Neal's lineal descendants "would receive only one dollar"; this provision essentially excluded Luther's grandchildren, Joshua, Luther O'Neal Sutter II and De'Shawn Robinson, from having an interest in the trust estate.[1]

Luther's trust estate was comprised of nine tracts of real estate described in separate quitclaim deeds that were attached as exhibits to the trust instrument and made part of the schedule of assets of the trust estate. Each deed reflects Luther as both grantor and grantee. In addition, Luther's trust instrument specified which named beneficiary would be distributed an interest in which tract of land at the closing of the trust.

Luther died on August 16, 1996, and on December 26, 1996, his daughters, Mary Lou and Cora Sue, as executrixes of Luther's last will and testament, filed a petition for declaratory judgment in chancery court, requesting the court to declare the rights of the parties under Luther's *inter vivos* trust and will.[2] As already noted, Joshua, Luther O'Neal II, and De'Shawn were included as defendants in this action, but only Joshua continued as a party both at trial and on appeal.

As previously mentioned, the chancellor ruled Luther's *inter vivos* trust was valid, but Joshua disagrees and, at least initially, raises the following three reasons why the chancellor's decision should be overturned: (1) The chancellor had no subject-matter jurisdiction of the case; (2) the *inter vivos* trust was invalid because the property had not been properly transferred to the trust; and (3) the chancellor failed to void the trust because the disposition of personal property under the terms of the trust violated the rule against perpetuities. We disagree with Joshua's contentions and affirm.

Regarding Joshua's first issue, he now concedes in his reply brief that the chancery court had jurisdiction to construe and interpret the validity of Luther's trust agreement. This court has long written that the construction, interpretation, and operation of trusts are matters within the jurisdiction of the courts of equity. *In Re: Long Trust v. Holk*, 315 Ark. 112, 864 S.W.2d 869 (1993); *see*

---

[1] Luther O'Neal II settled his claim in this matter for the sum of $20,000.00. Why De'Shawn is no longer involved in this dispute is not clear from the record.
[2] We note that Clayla Hicks also filed a brief in this matter, and largely takes the same position as Mary Lou and Cora Sue in opposing Joshua's argument in this appeal.

*also Spradling v. Spradling*, 101 Ark. 451, 455, 142 S.W. 848, 850 (1911). Having established the chancery court had jurisdiction in considering the construction and validity of Luther's *inter vivos* trust, we now address Joshua's second argument.

In his second point, Joshua argues Luther's status as a settlor or trustee is not mentioned in the deeds to the nine tracts of land that he listed as assets to his declaration of trust. Joshua contends that because Luther's deeds conveyed his tracts to himself, not to the trust, the tracts were never made a part of the trust. He further submits that, even if Luther had conveyed the land to "Luther S. Sutter, trustee, grantee," the land would not have been considered conveyed to the trust, but would have remained in Luther's name only. In support of this proposition, Joshua cites Ark. Code Ann. § 18-12-604 (1987), which in relevant part provides that the words "trustee" or "as trustees" following the names of grantee in any deed, without other language showing a trust, shall not be deemed to give notice to any person dealing with the land that a trust exists or that there are other beneficiaries of the conveyance except the named grantee.

The chancellor rejected Joshua's argument, and concluded that Luther, as a property owner, was able to create a trust by acting as a settlor and trustee and hold the property for his own benefit. The chancellor further held that Luther's trust document was a valid *inter vivos* trust established for Luther's use and benefit, and which named beneficiaries to take the property upon Luther's death. The chancellor found that the trust document, the amendments thereto, and the exhibits and deeds attached to the document, constituted the corpus of the trust, described the land which Luther made a part of the trust, and named the five beneficiaries who were to receive those described tracts of land. The chancellor's judgment found that these trust documents and the deposition of Howard Wygall[3] sustained the burden of proof that a valid trust was created by Luther; that the quitclaim deeds, attached as exhibits to the declaration of trust, properly identified the property to be transferred to the trust; and showed that the clear intention of Luther was to create a valid trust. We believe the chancellor reached the right result.

---

[3] Mr. Wygall is a registered public accountant who assisted in filling in the blanks of a printed declaration of trust "kit" obtained by Luther.

The ultimate issue to be decided in this appeal is whether Luther's declarations, exhibits, and other acts created a valid *inter vivos* trust. While not controlling, we believe the federal district court case of *United Bldg. & Loan Ass'n v. Garrett*, 64 F. Supp. 460 (W.D. Ark. 1946), is instructional and suggests the validity of Luther's trust. There, Presley G. Garrett owned certain stock certificates that he made the subject of separate declarations of trusts. Each certificate was attached to a trust document. In each trust, Garrett was named trustee for the use and benefit of nine beneficiaries, and, in the event of Garrett's death, a successor trustee was designated. The trust involving one certificate was to terminate one year after Garrett's death, and the trust estate was to be transferred to the named beneficiaries according to their described interests in the trust agreement. Garrett, however, expressly reserved the right and power to enjoy the use and benefit of the certificates, or parts thereof, for himself, and that the exercise of the power reserved to him would be conclusive on the named beneficiaries. Garrett died intestate and his widow filed suit, claiming Garrett's trusts were invalid. The widow urged that the certificates should be distributed in accordance with Arkansas's intestacy laws.

■■ In upholding Garrett's trust as valid, the federal district court considered and applied trust principles we believe are applicable to the situation now before us. Citing *Griffith v. Maxfield*, 66 Ark. 513, 51 S.W. 832 (1899), the *Garrett* court stated that it is beyond question that it is permissible for the settlor to act also as trustee and that a trust will be created without transfer of legal title to the property. *Garrett*, 64 F. Supp. at 463. The federal court further referred to the well-established rule that the settlor may reserve to himself a beneficial interest in the proceeds from the property for his life and the power to revoke the trust in whole or in part at any time. *Id.* at 464 (citing *Gall v. Union Nat'l Bank of Little Rock*, 203 Ark. 1000, 159 S.W.2d 757 (1942); *Cribbs v. Walker*, 74 Ark. 104, 85 S.W. 244 (1905)). In finding Garrett's trust valid, the federal court held that Garrett's reservation of dominion and control over the *res* did not negate his intention to create a present trust. *Id.*

■ In considering the one trust wherein Garrett fixed the termination date to be one year after the death of the settlor, the federal court further ruled such provision did not make the trust instrument testamentary, since the trust terms had passed an interest in the *res* to the beneficiaries during the life of the settlor, even though possession or enjoyment thereof was postponed until the death of the settlor. *Id.* at 465. The court further recognized that

the policy of the law favors the vesting of interests and, where possible, will construe a provision as a condition subsequent in preference to a condition precedent. *Id.; see also Farkas v. Williams*, 125 N.E.2d 600 (Ill. 1955), where the Illinois Supreme Court, relying on the *Garrett* case, wrote as follows:.

> So long as the trust continues, the cestuis have equitable interests, no matter who acts for them in protecting those interests, whether it be trustee or settlor. If the exercise of these powers by the settlor involves the total or partial destruction of the trust, as where the settlor has power to sell the res and keep the proceeds, the power seems to be treated as practically that of revocation of the trust. It leaves an equitable interest in the cestuis till revocation. *It shows a vested interest, subject to divestment, and not the lack of any interest at all.*

*Id.* at 608 (emphasis added).

██ In addition to the settled trust principles set out above, the *Garrett* court further emphasized that, in determining whether the reserved powers are so great as to negate an intent to create any present interest, one of the factors to be considered is the formality of the transaction. 64 F. Supp. at 465. There, the court pointed out that Garrett had executed and acknowledged each declaration of trust and the certificates were shown subject to a declaration of trust. The court found and held as follows:

> The settlor, by the declarations in question, intended and effected the transfer of a present beneficial interest to the named beneficiaries, retaining in himself the legal title in trust and an equitable interest for life in the proceeds of the funds. The powers reserved by the settlor were in the nature of conditions subsequent, which, if exercised by positive action on his part, would have divested the interest of the beneficiaries and denied them the possession and enjoyment of the res. *Since the settlor never chose to exercise the powers reserved by him, the interest of the beneficiaries was present and subsisting at his death, and they are now entitled to have the trust administered according to its terms.*

*Id.* at 466 (emphasis added).

██ In the instant case, and as touched on earlier above, the chancellor found that Luther executed a declaration of trust and amendments thereto, all of which were formally acknowledged. Luther specifically included in an attached "schedule of trust assets" deeds describing the nine tracts of land and directives as to how and

to whom those property interests were to be distributed. Also significant, Luther's last will and testament dated November 7, 1995, devised and bequeathed his entire estate to his June 1, 1994, *inter vivos* trust to be disposed of in accordance with those trust provisions. In this respect, we note the Uniform Testamentary Addition to Trusts Act, Ark. Code Ann. § 28-27-101 -105 (1987),[4] which in relevant part provides as follows:

> *Unless the testator's will provides otherwise, the property so devised or bequeathed shall not be deemed to be held under a testamentary trust of the testator but shall become a part of the trust to which it is given*; and shall be administered and disposed of in accordance with the provisions of the instrument or will setting forth the terms of the trust, including any amendments made before the death of the testator, regardless of whether made before or after the execution of the testator's will, and, if the testator's will so provides, including any amendments to the trust made after the death of the testator. A revocation or termination of the trust before the death of the testator shall cause the devise or bequest to lapse.

Ark. Code Ann. § 28-27-101 (emphasis added). From the foregoing, we cannot say the chancellor was clearly erroneous in holding Luther's trust to be valid.

In his final point, Joshua submits the chancellor erred in failing to void the trust because the disposition of personal property in Luther's trust violates the rule against perpetuities. He recites the common-law rule which voids any trust whose assets will not necessarily vest within some life in being at the time of its creation plus twenty-one years. *See Cotham v. First Nat'l Bank*, 287 Ark. 167, 697 S.W.2d 101 (1985). Joshua asserts the trust failed to dispose of the personalty and thus the trust was perpetual, and because the trust failed at its inception, the successor trustees hold the personalty upon a resulting trust for Luther's estate. This argument is meritless.

When entering into his June 1, 1994, trust, Luther executed a bill of sale that describes all of his tangible personal property, and he gave, sold, and conveyed that personalty to himself, as trustee. Luther, as trustee, acknowledged receipt of the personal property. Moreover, Luther's declaration of trust stated, "Upon my

---

[4] The Uniform Act has been modified by Act 751 of 1995. *See* Ark. Code Ann. § 28-27-106 (Supp. 1999).

death, the successor trustee is hereby *directed forthwith to transfer the trust estate* and all right, title, and interest in the trust estate to the named contingent beneficiaries." (Emphasis added.) In short, the rule against perpetuities was not violated in these circumstances since Luther's personalty was given to the trustee by way of a bill of sale and thereby made a part of a present trust for a subsequent and immediate transfer to the designated beneficiaries upon Luther's death.

For the reasons set out above, we affirm.